MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS V.
H. R. MILAM.

Decided March 29, 1899.

1. **Best Evidence—Written Contract.**

Objection that parol evidence as to a contract was secondary can not be sustained where it is not made to appear that the contract was in writing.

2. **Evidence Not Prejudicial.**

Evidence of a railway employe, in his suit for personal injuries, that the employer reserved hospital dues out of his wages, with his consent, for the support of a hospital for the treatment of injured employes, was not prejudicial to defendant.

3. **Impeachment of Witness.**

A witness who denies having made a statement contradictory to his testimony may be impeached by proof, not only of his having made the statement, but of matters relative to the time, place, and circumstances of his making it, the existence of which he has also denied.

4. **Charge—Contributory Negligence—Assumed Risk.**

A charge which directs a verdict for plaintiff if defendant is found negligent unless contributory negligence is found on the part of plaintiff, is not erroneous as conflicting with another charge submitting assumed risk as a defense, where the charge does not distinguish between these defenses,—they being substantially identical in cases where defendant was negligent.

5. **Master and Servant—Assumed Risk.**

The defense of assumed risk is not applicable where the servant's discovery of the defect is practically simultaneous with his injury.

6. **Same—Servant's Knowledge.**

The servant may presume that the master has discharged his duty in regard to furnishing proper machinery, and does not assume the risks from the master's failure to do so unless he knows of such failure and risk.

7. **Charge—Damages.**

See charge on the measure of damages held not subject to the construction that it authorized recovery for diminished earning capacity not resulting from the injury sued for.

APPEAL from Williamson. Tried below before Hon. R. E. BROOKS.

*Fiset & Miller,* for appellant.

*John W. Parker,* for appellee.

KEY, ASSOCIATE JUSTICE.—As several assignments of error are predicated upon the charge of the court, and as the nature and result of the suit are fully explained in the charge, we set the latter out in full.

"Gentlemen of the jury: This is a suit by H. R. Milam, as plaintiff, against the Missouri, Kansas & Texas Railway Company of Texas, as defendant, to recover damages for personal injuries alleged to have been inflicted upon plaintiff by defendant while in the service of defendant as a brakeman on one of its freight trains.

"Plaintiff alleges that on January 29, 1897, he was in the employment of the defendant company as a brakeman on one of its freight

trains and was then engaged in such service at Waco, Texas, and that on said date it became necessary for plaintiff, in the performance of his duties, to go between two of defendant's cars to make a coupling, and while so engaged between said cars he lost his footing and fell between the drawheads of the cars, which came together at that moment and crushed plaintiff's hips and thighs and crushed and injured his spinal column, severing the muscles and ligaments which joined his backbone to his hips; and wounded his genital organs, lower bowels, kidneys, and bladder, and otherwise injuring him internally, and caused him great mental and physical pain and suffering, and that by reason of such injuries plaintiff has lost the use of his lower limbs, his health is greatly impaired, and he has been disabled from doing any labor from the time of said injuries to this time, and has lost his wages for said time; that his injuries are permanent and incurable, and his ability to earn money in the future has been permanently impaired, for all of which injuries plaintiff seeks to recover damages in this suit.

"Plaintiff alleges that the hand-holds or grab-irons in the end of each freight car were necessary appliances to enable brakemen to couple and uncouple freight cars with reasonable safety; that the stationary car upon which plaintiff was trying to make a coupling was not equipped or provided with a hand-hold or grab-iron on the end thereof, which fact was known to the defendant, or by the exercise of ordinary care could and would have been known to defendant, but was unknown to plaintiff; and that plaintiff at the time alleged entered between the cars, one of which was stationary and the other moving, for the purpose of making a coupling, and that he was caused to fall and received the injuries complained of because of the absence of a hand hold on said stationary car, and that the defendant was guilty of negligence in failing to provide said car with hand-holds or grab-irons, and that plaintiff himself was using due care in attempting to make said coupling.

"The defendant answers by a general denial of all the allegations of plaintiff's petition, and specially says that the stationary car plaintiff was trying to couple on the occasion of his injury was provided with all necessary hand-holds on the end thereof for use of brakemen in making coupling of same.

"That the business of a brakeman was a dangerous one, especially in coupling cars, which was well known to plaintiff, and it was especially dangerous on the occasion of said injury because of the frozen condition of the ground; that if plaintiff was injured as alleged it was either an accident, incident to the dangerous business he was engaged in, that could not be avoided, or was due to plaintiff's want of ordinary care in the manner of making or trying to make said coupling.

"That plaintiff negligently went between the cars with his face turned to the moving car and attempted to make the coupling in that position, which was more dangerous than to couple cars with the face turned toward the stationary car; that plaintiff did not make use of nor attempt

to use the hand-holds on the end of the stationary car, and if said hand-holds were missing it would not have contributed to his injuries, and that said injuries were occasioned by defendant's own negligence.

"Defendant further alleges that if the hand-holds on said stationary car were missing, that plaintiff knew or by the exercise of ordinary care could have known it in time to avoid the danger, and it was a patent, open defect, and in attempting to make said coupling under the circumstances plaintiff assumed the risk therefrom and was guilty of contributory negligence, wherefore it says defendant is not liable in this suit.

"Upon the law of this case, you are instructed as follows:

1.    "It was the duty of the defendant railway company to use ordinary care and diligence to furnish safe machinery and cars properly equipped and supplied with appliances reasonably necessary and proper to enable its employes to perform the duties required of them with reasonable degree of safety.

2.    "It was also the duty of the plaintiff to exercise ordinary care and prudence in the performance of his duties, to avoid injury to himself.

3.    "By the term negligence as used in this charge is meant the doing of that which a person of ordinary care and prudence would not have done under similar circumstances, or the failure to do that which such a person would have done under like circumstances.   ·

4.    "By the term ordinary care as used in this charge is meant such degree of care as a person of ordinary prudence would exercise under similar circumstances.

5.    "The plaintiff when he entered the service of the defendant company as a brakeman assumed the risks and dangers ordinarily incident to such employment, but did not assume any risks arising from the negligence of the defendant, if any there was, unless the plaintiff knew of such negligence in time to have avoided injury therefrom.

6.    "Now, if you find from a preponderance of the evidence that the plaintiff H. R. Milam was in the employment of the defendant company as a brakeman, as alleged in his petition, and that while engaged in his duties as such brakeman, in coupling cars for said defendant, that he was injured as alleged in his petition; and you further find from the evidence that the stationary car which plaintiff was endeavoring to couple at said time was not provided with a hand-hold or grab-iron on the end thereof, and that the defendant knew or by the exercise of ordinary care and diligence could have known that said car was not so equipped with the hand-hold, if you find it was not, prior to said accident, and that a hand-hold in the end of said car was a necessary appliance of said car to enable brakemen to perform their duties in coupling said car with safety, and that such hand-hold was such an appliance as defendant company rested under an obligation to provide in the discharge of its general duty to use ordinary care to furnish reasonably safe appliances in coupling cars, as heretofore explained to you in this charge, and that the failure of defendant company to provide said stationary car with

such hand-hold, if you find there was such failure, amounted to negligence on the part of said company, as that term has been hereinbefore defined in this charge, and that such negligence, if any, caused plaintiff to receive the injuries complained of in his petition, or any of them, then you will find a verdict for the plaintiff, unless you further find that plaintiff was himself guilty of negligence which contributed to his injuries, as will be hereinafter explained.

7. "You are further instructed that if you find from the evidence that plaintiff was himself guilty of negligence in the manner in which he attempted to make said coupling which contributed to his injuries, then he can not recover, even though you should find the defendant company was negligent in using said car without hand-holds, if it did so use it.

8. "Now, if you find from the evidence that said stationary car was without a hand-hold, and that the defendant company was guilty of negligence in using said car in such condition, if you find it did so use it, but you further find that plaintiff knew or ascertained that said car was not supplied with a hand-hold in the end thereof in time to have avoided the injuries received by him, if any, by the exercise of ordinary care on his part, then he can not recover, and if you so find you will return a verdict for the defendant.

9. "You are further instructed that if you find from the evidence that the plaintiff, at the time he attempted to make the coupling in which he was injured, if he was injured, went between the cars with his face turned toward the moving car and attempted to make a coupling in that position, and that this was more dangerous than to couple cars with the face turned toward the stationary car, and that such act, if any, on plaintiff's part was negligence, as that term has been heretofore explained, and that same contributed to plaintiff's injuries, then in that event plaintiff would be chargeable with contributory negligence and could not recover, and if you find the facts to be as above set out, you will return a verdict for the defendant, even though you should find the defendant was guilty of negligence in failing to provide hand-holds on the end of said stationary car, if it did so fail.

10. "You are further instructed that unless you find from the evidence that the hand-hold was not on the end of the stationary car at the time of the accident, and that the absence of the hand-hold was negligence on the part of defendant and was the proximate cause of plaintiff's injuries, you will return a verdict for the defendant.

11. "Unless you find from a preponderance of the evidence that the stationary car plaintiff was endeavoring to couple at the time of the accident was not provided with a hand-hold or grab-iron in the end thereof; and unless you find that the defendant company was guilty of negligence in using such car in such condition, if you find it did so, you will return a verdict for the defendant company, or if you find the plaintiff was guilty of contributory negligence as heretofore defined, you will return a verdict for defendant company.

12. "If you find a verdict for the plaintiff under the foregoing instructions, you will find in such manner as will reasonably and fairly compensate him for the mental and physical pain he suffered, if any, as the result of such injuries, and also the reasonable value of his services for the time lost by reason thereof, if any, and also for his diminished capacity to labor and earn money in the future, if any.

13. "The evidence admitted before you as to the statements claimed to have been made by the witness Fallon to the witness Cherington as to the hand-hold or absence thereof on the stationary car was only admitted for the purpose of affecting the credibility of the witness Fallon, and not as evidence of the facts stated by said Fallon to said Cherington, if he made any such statements, and you will only consider such testimony for the purpose for which it was admitted and none other.

14. "The burden of proof is on the plaintiff to show by a preponderance of the evidence the facts which will entitle him to recover.

15. "In the defenses of contributory negligence on part of the plaintiff, the burden of proof is on the defendant to establish the same by a like preponderance of the evidence.

16. "The jury are exclusive judges of the credibility of the witnesses, the facts proven, and the weight to be given the testimony, but must receive the law from the court and be governed thereby."

The court also gave the following special instructions requested by the defendant:

"If the jury believe that the plaintiff discovered or by ordinary care could have discovered that the stationary car had not end hand-holds, if it had not such hand-holds, in time to avoid the risk of coupling cars without such hand-holds, but he proceeded to attempt to make the coupling and was injured because of the failure to have such hand-holds, if there was such failure, then you are instructed that plaintiff assumed the risk and can not recover."

"If the jury believe plaintiff did not use ordinary care in going between the cars without first ascertaining whether there was a hand-hold on the stationary car, or in attempting to make the coupling after discovering the absence of the hand-hold, if it was absent, or in the manner of attempting to make the coupling, or in the manner of attempting to get from between the cars, and that such failure to use ordinary care in any manner contributed to causing his injuries, then you will find for defendant."

"The defendant was required to use only ordinary care in furnishing to the employes reasonably safe cars and appliances, and to inspect same to see that they remained in good repair, and if the jury believe from the evidence that defendant performed its duty to plaintiff, and that he was nevertheless injured because of some defect, you will find for defendant."

The trial resulted in a verdict and judgment for the plaintiff for $10,-000, and the defendant has appealed.

There is testimony in the record that will support findings in favor

of the plaintiff and against the defendant on all the issues of fact submitted to the jury; and therefore, in support of the verdict we find for the plaintiff on all of said issues, including the negligence of the defendant and the non-negligence of the plaintiff.

*Opinion.*—Objections are urged to the action of the court in overruling a general demurrer and certain special exceptions to the plaintiff's petition. It would extend this opinion beyond the proper limits to set out the petition in full and to consider in detail the numerous objections urged against it. Suffice it to say that, in our opinion, the petition states a cause of action free from all the objections urged in appellant's brief.

Other assignments of error assail the verdict of the jury as being unsupported by the testimony, and complain of the action of the court in not giving a special instruction requested by the defendant directing a verdict for it. As before stated, there is testimony in the record that will support findings that the defendant was guilty of negligence in the particulars charged in the plaintiff's petition, and that the plaintiff was not guilty of contributory negligence, and that the risk involved in making the coupling without the hand-hold, was not a risk assumed by the plaintiff.

We do not care to elaborate upon these questions. They were all questions of fact to be determined by the jury upon consideration of the evidence relating thereto. The jury have decided them against appellant, and we do not feel authorized to set aside the verdict.

Over objection of appellant, appellee was permitted to state in his testimony that appellant reserved out of his wages fifty cents a month, called hospital dues, which was contributed to the support and maintenance of appellant's hospital at Houston, Texas, where employes injured in its service were entitled to receive medical attention.

This testimony was objected to upon the grounds that the contract was the best evidence, and if no contract existed, and it was a mere custom, that question should be left to the jury, and that the testimony was incompetent and calculated to prejudice the jury. It was not shown that there was any written contract; in fact, the witness stated that there was no contract of any kind. This meets the first objection.

As to the second objection, if it be true that the question of custom should have been left to the jury, that would be no reason for excluding the testimony; the jury would have to hear the testimony in order to determine whether or not the custom existed.

The other objection is without merit. It was shown by other testimony that appellant had a hospital at Houston, Texas, for the benefit of its employes, and we fail to see how it could prejudice it to show that appellee, among the other employes, contributed to a fund for the maintenance of the hospital. The amount reserved from appellee's wages was not reserved without his consent. His own testimony, in effect, shows that he acquiesced.

W. J. Fallon, a witness for appellant, testified that the car in question had hand-holds on it, and on cross-examination he was asked by the plaintiff's counsel whether he was at the plaintiff's house in Hillsboro on the day of the accident or a day or two thereafter, and whether he saw L. W. Cherington there, and whether he left plaintiff's house in a buggy with Cherington and rode to town with him, and whether he told Cherington while riding in the buggy to town that one of the cars which the plaintiff was coupling had no hand-holds on the end where the plaintiff stood. The witness answered that he and Cherington did not leave the plaintiff's house in a buggy going in the direction of town, and that he did not tell Cherington while on the way to town that one of the cars which Milam was coupling had no hand-holds on the end where Milam stood. He also stated that he was not at Milam's house at any time while Cherington was there, and that he did not leave said house in a buggy accompanied by Cherington; that he never at any time rode away from Milam's house in a buggy with Cherington; that he was not acquainted with Myers, Ballard, or Mr. or Mrs. Marsh, and did not meet them at Milam's house at any time; that he met Cherington on the morning that Milam was hurt standing in front of a clothing store; that he accompanied Milam to his house in a carriage when he reached Hillsboro, after being hurt, and was there again about three or four days afterwards, and went in a buggy; that he did not on that occasion see Mrs. Milam, and that there was nobody at the house but some children.

Thereafter, the plaintiff introduced the testimony of Mrs. Milam, Mrs. Marsh, and Mr. Myers, to the effect that W. J. Fallon was at Milam's house two or three days after he was brought home hurt; that Cherington and Fallon were there together on that occasion, and left the house together and rode off in a buggy, as if they were going to town; that these witnesses were at Milam's house at the time that Fallon and Cherington were there. The plaintiff also introduced the testimony of L. W. Cherington, who stated that he was at the plaintiff's house the day after he was hurt; that he saw Fallon there, and that on the day or a day or two after the plaintiff was hurt, he, Cherington, and the witness Fallon left Milam's house together in a buggy, and on the way to town Fallon stated to the witness that the car Milam was attempting to couple when he got hurt had no hand-holds on the end of it where Milam stood.

Appellant interposed several objections to this testimony, but the only one urged in this court is that the plaintiff sought to impeach the witness Fallon by contradicting him upon irrelevant and immaterial matter, the contention being that while it was competent to contradict his testimony in which he stated that the car had hand-holds on it, by showing that he stated to Cherington that it did not have hand-holds on it, it was not competent to contradict his statement that he was not at Milam's house while Cherington was there, and did not ride in a buggy with Cherington, etc. We think the testimony was admissible. The

latter statements were relevant to the main statement testified to by Cherington. 1 Whart. on Ev., 2 ed., secs. 20, 21, 27, 28, 37.

Many objections are urged against the charge of the court—among others, that it was contradictory in terms and in conflict with the special charges given; that it was misleading and confusing and failed to properly present and submit the issues raised by the pleadings and evidence.

We shall not undertake to discuss all of these objections in detail, but will refer to some which are deemed of most importance.

It is contended that that portion of the charge which submitted to the jury the particular facts which if found by them would entitle the plaintiff to recover, excluded from the consideration of the jury any matter of defense except that of contributory negligence, because it told the jury, if they found the facts therein recited, to find for the plaintiff, "unless you further find that the plaintiff was himself guilty of negligence which contributed to his injuries, as will be hereinafter explained." The charge then proceeds, so appellant contends, to submit both the issues of contributory negligence and assumed risk, and special charges were also given bearing upon both of these subjects. It is contended that so much of the court's charge as bears upon the question of assumed risk and the special charge requested by appellant and given upon that subject, are in conflict with, and therefore contradictory of, that portion of the charge ending with the quotation above given, and that this conflict brings the case within the rule announced in Baker v. Ashe, 80 Texas, 361.

It must be admitted that the charge would have been more accurate if, instead of using the language quoted, it had told the jury, if they found the facts to be as therein stated, to find for the plaintiff, unless they should find for the defendant on one or more of the issues thereafter submitted to them in the main charge, or in requested instructions. However, considering the entire charge together, and the similarity, if not identity of the defense of contributory negligence and assumed risk, when interposed as a defense against negligence on the part of the defendant, we do not believe that the jury were misled or confused by the charge in this case. While there are some cases which hold that the doctrine of assumed risk is available, in particular instances, as a defense to a cause of action predicated upon the negligence of the master, and that such assumed risk is not properly denominated contributory negligence (Green v. Cross & Eddy, 79 Texas, 132; Railway v. Bingle, 9 Texas Civil Appeals, 325; Railway v. Bryant, 27 Southwestern Reporter, 826), the general rule is, that while the servant assumes the risks ordinarily incident to the service he engages in, he does not assume such risks as arise from the negligence of the master. Pierce on Railroads, 371; Railway v. Silliphant, 70 Texas, 630; Brown v. Sullivan, 71 Texas, 476; Railway v. Eberhart, 91 Texas, 323. And in some cases the terms assumed risk and contributory negligence have been used interchangeably. Crawford v. Railway 89 Texas, 92.

In this case, the jury were not told that these defenses were separate and distinct, and if in legal terminology they are so, considering the language in which they were submitted to the jury, we do not think the latter understood such distinction to exist. Construing the charge in this light, that is to say, as making no distinction between contributory negligence and assumed risk as a defense to the negligence of the defendant, the different paragraphs harmonize and are not in conflict.

What has been said in reference to the identity of the defenses of contributory negligence and assumed risk must be understood as limited to such cases as involve negligence on the part of the master. Of course, the ordinary risks that are commonly incident to the service in which the servant is engaged, and that do not result from the master's negligence, are assumed by the servant; and in this sense, the doctrine of assumed risk is undoubtedly separate and distinct from contributory negligence. But this character of assumed risk has no bearing upon the question under consideration, because under the paragraph of the charge from which we have quoted, the jury were not authorized to find for the plaintiff unless the defendant was guilty of negligence. Furthermore, if it be conceded that assumed risk is available as a defense to an action predicated upon the master's negligence, it is doubtful if it has application in this case. The plaintiff's discovery of the absence of the hand-hold was practically simultaneous with his act of coupling the cars.

In Railway v. Hannig, 91 Texas, 347, the trial court instructed the jury as follows: "If you find from the evidence that it was part of the duty of the plaintiff and his colaborers to unload switch points, and the number of men to handle the same and the danger incident to handling same was a matter open and patent to the common observation, and the plaintiff could have known these facts by the use of ordinary care, and no act of negligence on the part of the defendant's foreman, Newman, contributed to said injury, he assumed the risk incident to his employment, and can not recover; and if you so find, you will find for defendant."

Considering a cross-assignment of error, the Supreme Court held that this charge was erroneous, and used this language: "We understand the law to be, that when the servant enters the employment of the master he has the right to rely upon the assumption that the machinery, tools, and appliances with which he is called upon to work are reasonably safe, and that the business is conducted in a reasonably safe manner. He is not required to use ordinary care to see whether this has been done or not. He does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risks, or in the ordinary discharge of his own duty must necessarily have acquired the knowledge. Bonnet v. Railway, 89 Texas, 72; Railway v. Bingle, ante, p. 287."

The testimony is positive and undisputed to the effect that appellee was not aware of the absence of the hand-hold until he went between

the cars and attempted to make the coupling. This being the case, it would seem that the doctrine of assumed risk has no application. If he had known of the defect before going between the cars and attempting to make the coupling, the rule might be different.

It is also claimed that the charge contains error in reference to the measure of damages, the contention being that it authorized the jury to allow the plaintiff compensation for diminished capacity to labor and earn money in the future, whether the same resulted from the injuries complained of in his petition or from other causes.

We do not think the charge susceptible of this construction. Upon the whole, we find no reversible error in the charge of the court or in the refusal of special charges; and after considering all the questions presented in appellant's brief, our conclusion is that the judgment should be affirmed, and it is so ordered.

Counsel for appellee contends that under the Act of Congress dated March 2, 1893, prescribing the manner in which cars used in interstate commerce shall be equipped, the questions of assumed risk and contributory negligence are eliminated in this case. We have not deemed it necessary to determine whether the case comes within the purview of the statute, because if it does not, and must be determined exclusively by the rules of the common law, still no reversible error is made to appear.

*Affirmed.*

Writ of error refused.