## SHEPHERD v. DENVER & R. G. R. CO.

No. 2607.    Decided December 1, 1914.    On Application for Rehearing January 6, 1915 (145 Pac. 296).

1. APPEAL AND ERROR—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—SUFFICIENCY. Objections that testimony as to the contents of an account book was irrelevant, incompetent, and immaterial, and wholly collateral and hearsay as to plaintiff, were sufficiently specific to entitle plaintiff to a review of the ruling admitting the evidence. (Page 301.)

2. WITNESSES—IMPEACHMENT—IMMATERIAL MATTERS. Where a witness, having testified to his presence at the place of the accident, stated on cross-examination that he was at that time hauling lumber to another town which he delivered the next day, the fact whether the witness delivered lumber is material, and he may be contradicted and impeached on that matter. (Page 302.)

3. WITNESSES—IMPEACHING EVIDENCE—ACCOUNT BOOKS—ADMISSIBILITY—HEARSAY. In an action by one injured by a train, where a witness accounted for his presence at the place of the accident by stating that he was hauling a load of lumber which was delivered at a store the next day, the manager of the store cannot testify that its books showed no delivery of lumber by the witness at that time; for the books which related to transactions between third persons, were res inter alios acta and hearsay, and the manager by testifying to their contents was not merely refreshing his memory, but was putting the books in evidence. (Page 304.)

4. APPEAL AND ERROR—REVIEW—HARMLESS ERROR. The erroneous admission of testimony as to the contents of an account book,

offered to contradict the explanation of plaintiff's witness as to why he was at the place of the accident, is prejudicial error. (Page 306.)

### On Motion for Rehearing.

5. EVIDENCE—ACCOUNT BOOKS—ADMISSIBILITY. Entries made in a record book or document by one in the ordinary course of his business, employment, or profession, having personal knowledge of the fact, may be received in evidence, where the entrant is dead, insane, beyond the jurisdiction of the court, or, if living, is unable to recall the facts, or refresh his memory by referring to the books, although able to testify as to the authenticity of the entries. (Page 317.)

· McCARTY, C. J., dissenting.

Appeal from District Court, Fourth District, *Hon. A. B. Morgan*, Judge.

Action by Joseph G. Shepherd against Denver & Rio Grande Railroad Company, a corporation.

Judgment for defendant. Plaintiff appeals.

REVERSED and remanded.

*E. A. Walton* for appellant.

*Van Cott, Allison & Riter* for respondent.

STRAUP, J.

The plaintiff brought this action to recover damages for the loss of a leg. In the complaint it is alleged that he was in the defendant's employ as a laborer shoveling cinders in its yard at Thistle, and in the performance of his work was required to be on the track between the rails; and that the defendant, without observing a lookout or giving warning, ran over him with one of its engines. The defendant answering admitted the injuries on the day alleged, the 5th of January, 1911, denied the charged negligence, and pleaded contributory negligence and assumption of risk. The case was tried to the court and a jury, and resulted in a verdict in favor of the defendant. The plaintiff appeals.

The principal assignment relates to the admission of certain evidence over the plaintiff's objections. The bill recites that evidence on behalf of plaintiff was given to support the allegations of his complaint, and on behalf of the defendant to disprove them; and that a verdict either in favor of the defendant or the plaintiff would be supported by evidence. There is no dispute that the plaintiff, while working on the track in the defendant's yards at Thistle, was injured on the 5th day of January, 1911, by an engine operated or pushed against him. In that respect the bill recites that the plaintiff adduced evidence tending to show that the engine in the yard, without notice or signal, was operated towards him, who, at work on the track, did not see the approaching engine because of the dead engine between him and the approaching engine; and that the approaching engine was operated against the dead engine, causing it to be pushed or moved against him. The defendant adduced evidence tending to show that two engines coupled together were moved along the track in the yard in clear view of the plaintiff for 500 feet or more, and that timely signals and warnings were given of their approach, and that it was not, but the plaintiff was, negligent.

The plaintiff called as a witness in his behalf one Ralph Lewis, who testified that he was acquainted with the yards at Thistle, and while traveling from his ranch to Spanish Fork with a load of lumber, and passing through Thistle, witnessed the accident about seventy-five feet away. He testified that two engines coupled together were, without warning or signals, operated against a third engine, which was pushed against the plaintiff and injured him. On cross examination he testified that he was taking the lumber to Spanish Fork, a town beyond Thistle, and reached Spanish Fork on the night of the day of the accident and there made delivery of the lumber the next morning to the Farmers' Co-op store, and was given credit for it. He further testified that one Joseph Hanson was the owner of the Co-op, and that he did the business with him.

The defendant called Joseph Hanson, who testified that he was the manager of the Co-op store and that the witness

Ralph Lewis had had an account at the store. Then he was asked by the counsel for defendant:

"Q. Have you the books with you that show his account? A. Yes, sir. Q. Will you turn to his account, please? (Witness opened book.) When did he open up his account with you? (That was objected to by counsel for plaintiff as 'irrelevant, incompetent, and immaterial; wholly collateral, and hearsay as to this plaintiff.') Counsel for Defendant: If these books, your honor—the witness testified with respect to a load of lumber that was delivered, and that he had an account there and got credit for it. Counsel for Plaintiff: We submit that it is immaterial and entirely collateral —collateral issues—if we took his answer on immaterial matter on cross examination. Counsel for Defendant: But it was not an immaterial matter; it was of vital importance. (The objection was overruled, to which the plaintiff excepted.) The witness answered: His account was opened up February 23, 1911, on the books—his individual account. Q. That was the beginning of his account? A. Yes, sir. Q. Now, do your records disclose any credits that the Farmers' Co-op gave him for any load of lumber? A. Yes, sir. Q. On what date? Counsel for Plaintiff: Now, that is objected to as irrelevant, incompetent, and immaterial. The Court: I think that would be incompetent, probably. I don't see on what theory you would be able to get that in. Counsel for Defendant: The witness testified that on January 4th (5th) he came down the canyon with a load of lumber, and he said that on the very next day he made delivery of that load of lumber."

Here, on the settlement of the bill, a controversy arose between counsel as to a statement or remark made by counsel for plaintiff. As shown by the transcript of the official reporter, what counsel said was, "I shall withdraw the objection." Counsel for plaintiff, however, urged, at the settlement, that his remarks were not correctly reported, and that what he in fact said was, "I still insist on the objection," but that the objection was overruled, to which ruling he excepted. The court, in such particular, settled the bill as shown by the reporter's transcript, but at the same time,

and in that connection, put in the bill this statement by the court:

"I feel very confident that counsel for plaintiff protected himself in the matter of the introduction of that testimony. While I could not remember it as to the specific questions and answers, that matter was in my. mind all the way along there that he was strenuously objecting to that contradicting testimony. I thought at the time it was proper to be admitted. I think now that it should have been admitted, or else I should have granted a new trial on the theory that that evidence had been admitted over the objection of counsel for plaintiff. I understood all through and in the matter of the argument for a new trial that counsel for plaintiff had saved the record on the introduction of that testimony."

Recurring to the further examination of the witness Hanson with the books, counsel for defendant further asked him:

"Q. Now, the question was, on what date were any credits given him (the witness Ralph Lewis) for a load of lumber? A. The first credits we have here, or, at least, one credit we have, is May 5, 1911, 'By lumber, $19.53.' Q. And do your records disclose how much lumber? A. No, sir. Just the amount of dollars and cents he got for his lumber."

The witness further testified that when a load of lumber was delivered credit slips in duplicate were made, one given to the customer and one retained by the store, "and every morning they were copied on the daybook, and from the daybook onto the ledger." On cross-examination he was asked:

"Q. The books you have here are merely ledgers? A. Yes, sir; they are ledgers. Q. And the course of your business, I assume, was to have some other book of original entry? A. Yes, sir. Q. What do you call it? Daybook? A. Yes, sir. Q. And before that entry there would be a slip? A. Yes, sir. They should all correspond in dates."

In response to further questions on cross examination, the witness testified that Ralph Lewis had no individual account prior to February 23, 1911, but that Lewis Bros. had an account covering January 4, 1911, and that there was a balance due them on January 3, 1911, and that they had an

account with them in December, 1910. He was further asked on cross examination:

"Q. Do you remember whether or not he (Ralph Lewis) delivered some lumber to you on any account, or delivered lumber to you in January, 1911? A. No, I don't remember. He might brought lumber, and might not have brought lumber. There was several loads of lumber came in with different boys, and it is two years ago, and I don't try to remember those things, because we keep track of them on our books."

On re-direct the witness was asked:

"Now, will you be good enough to look at the account of Lewis Bros., which you said was in December, 1910? A. Yes, sir. Q. Is that account credited with any lumber, and, if so, what? A. There is a little credit in December, 1910. Q. Now turn to the Lewis Bros. account in the other book, if you please. A. The two Lewis Bros.? A. Yes. (Witness opens book.) Is the account that you are now looking at the one subsequent to December, 1910? A. Yes, sir; that is carried from this book into this one. That is a corresponding chain of accounts. There is a $62.82 credit to Lewis Bros. Q. Did you carry the account from this book into the one that you have in your hands? A. Yes, sir. Q. On what date does the credit appear there? A. It appears January 3d, when it was transferred. Q. And when did you balance up this account? A. It was balanced on January 3d. Q. Confine your attention to this account. Will you please examine it and tell me whether there were any credits for lumber, and, if so, when? Counsel for Plaintiff: I object to that as incompetent, hearsay, irrelevant, and immaterial. This book is not competent as against the plaintiff in this case. It is between other parties. Counsel for Defendant: But this is re-direct examination of the matter which you went into on your cross examination. Counsel for Plaintiff: I submit it. (The objection was overruled and an exception noted.) Counsel for the Defendant (proceeding with the witness): Q. I am referring now to the account which begins January 3, 1911, which you say is a continuation of the other one. A. You ask for all the credits? Q. No,

merely the credits for any lumber, all the lumber credits.
A. (Witness looking at the book.) We have one July 7,
1911; July 18th, $41.83; July 26th, $13.99; August 28th by
lumber. That is the last credit of lumber to the Lewis Bros.''

Thus, it is made to appear that the defendant was per-
mitted, by the account books of the Farmers' Co-op store—
books of a third party showing accounts of transactions be-
tween him and another, both strangers to both litigants—to
contradict and disprove the testimony of plaintiff's witness
that he, on the morning after the accident, delivered to the
Co-op store a load of lumber and was given credit for it.
It is urged by plaintiff that this was improper: (1) Be-
cause the witness was permitted to be contradicted and im-
peached on a wholly collateral and immaterial matter; and
(2) that, though it was proper to so contradict and im-
peach him, the evidence by which the contradiction and im-
peachment was permitted was incompetent for two reasons
(a) the books themselves were *res inter alios acta* and hearsay;
and (b) were not books of original entry. The plaintiff,
however, is not entitled to a review of the ruling on the last
alleged ground (b), because no such objection was made to
the offer in the court below.

It is contended by the respondent that no sufficient and
proper objections were made to the offer and admission
of the evidence on the other alleged grounds. The
bill as settled shows a record somewhat uncertain as to
whether an objection was made to the particular ques-
tion asked the witness Hanson heretofore referred to; that
is, though made, whether it was not withdrawn. But even as
to that, the court certifies to us that counsel for plaintiff
strenuously objected to ''that contradicting testimony,'' and
that the court felt confident that he had protected himself
and saved the record in such particular. However, inde-
pendently of that, we think the record shows sufficient and
proper objections to the evidence and exceptions to the rul-
ings complained of. At the very threshold, when the witness
Hanson was called to the stand with the books of the Co-op
store and was asked to turn to the account of the witness
Ralph Lewis, and upon opening the book was asked to state

when Ralph Lewis opened his account with the store, plaintiff's counsel objected, upon the grounds that the evidence sought was "irrelevant, incompetent, immaterial and wholly collateral, and hearsay as to this plaintiff," and when the witness Hanson's attention was called to the account beginning January 3, 1911, and was asked to examine it and to state whether there was any credit for lumber, and if so to state when it was, further objections were made on the grounds that the testimony called for was "incompetent, hearsay, irrelevant, and immaterial" and that "this book is not competent as against the plaintiff in this case." We think therefore the record discloses sufficient objections upon the grounds, not only that the testimony related to collateral and immaterial matters, but also that it was hearsay and incompetent; and that the objections were sufficiently specific to call attention of the court and counsel to the grounds upon which it was claimed the proffered evidence was objectionable and to entitle plaintiff to a review of the rulings in such particular.

Counsel do not dispute the familiar rule that a witness may not be contradicted or impeached on collateral, immaterial, or irrelevant matters; and that his answers, as to such matters drawn out on cross examination, are generally conclusive on the cross examining party, except such as bear on the recollection of the witness, or tend to show a state of feeling or bias, or source of knowledge, or interest in the litigation, or relation to the parties. The further well-known rule is also conceded that the test of whether the matter is collateral or not is whether the party seeking to introduce the evidence for the purpose of contradiction or impeachment would be entitled to prove it as as a part of his case, or otherwise to prove the fact in his behalf. Now, measured by this test, appellant asserts that, since the exact time and place of the accident were wholly without dispute, the answer of the witness on cross examination that he, the next morning after the accident, delivered a load of lumber to the Co-op store at Spanish Fork, was testimony respecting a wholly collateral and immaterial matter; and, though it was proper cross examination, the answer

of the witness was nevertheless conclusive on the cross examining party. At first blush that may seem plausible, but, on reflection, we are of the opinion that the fact of whether the witness delivered lumber at the store at Spanish Fork, as testified to by him, had some relation to the circumstance of his presence at the accident. The witness testified that he passed the place of the accident with a load of lumber, witnessed the accident, and then drove from there with the lumber to Spanish Fork, arriving there in the evening, and made delivery of the lumber the next morning; and, when asked when he drew his pay, stated he was given credit for the lumber. Now, the fact that he did not deliver the lumber the next morning at the store as testified to by him, and made no delivery of lumber until some time thereafter, tended to discredit the statement of the witness that he had a load of lumber with him at the time of the accident; and that tended to discredit the statement that he was at the place of the accident and witnessed it. A case, as we think, in point is *East Tennessee, V. & G. R. R. Co.* v. *Daniel*, 91 Ga. 768; 18 S. E. 22. The syllabus reflects the point decided. It is:

"Where a witness, by way of accounting for his presence at the scene of the killing of an animal, states that immediately before going there he made a particular purchase at a certain store, evidence is admissible, in behalf of the opposite party, showing or tending to show that he made no such purchase on the occasion referred to. While this fact is not directly material on the circumstances of the killing, it is indirectly material, because it contradicts the witness as to the train of events which led him to be present, and thus tends to discredit him as to the fact of his presence."

The following, on principle, are to the same effect: *Sampson* v. *Hughes*, 147 Cal. 62; 81 Pac. 292; *Boche* v. *State*, 84 Neb. 845; 122 N. W. 72; *M., K. & T. Ry. Co.* v. *Milam*, 20 Tex. Civ. App. 688; 50 S. W. 417.

We are therefore of the opinion that the defendant, to impeach and contradict the witness, was entitled to prove the fact that he did not deliver the lumber to the Co-op store as testified to by him the next morning after the accident,

and to show when, if at all, he made delivery of lumber at the store.

The serious question is as to the competency of the evidence by which the defendant was permitted to prove such fact. It was entitled to prove it by any witness who had knowledge of the fact, but not by hearsay evidence. The defendant was permitted to prove it by entries in the account books, of the Co-op store, books of a third party showing accounts of transactions between him and plaintiff's witness both strangers to both litigants. It did not attempt nor offer to prove it in any other manner. While the defendant did not offer nor put the books themselves in evidence, yet it called the witness Hanson, the manager of store, identified the books by him, required him to take and open them and to turn to and examine the accounts between the witness Ralph Lewis and the Co-op store, and to then state what the entries, as shown by the books, indicated respecting the delivery of lumber by Lewis and the credits given him therefor. Nowhere was the witness Hanson asked to testify, nor did he testify, as to the fact of whether the witness Ralph Lewis delivered lumber to the store, and, if so, when such delivery was made. All that he was asked to state, and all that he did state, was what the books in such particular themselves showed. We think, as between the plaintiff and the defendant, the account books of the Co-op store, books showing accounts of transactions between parties both of whom were strangers to both litigants, were *res inter alios acta* and hearsay and not admissible. 2 Ency. Ev. 667, and numerous cases there referred to; 3 Jones Const. on Ev., section 574, and cases. To permit a witness as was done, to state what the books themselves showed— a witness to take them, turn to them, examine the accounts between the plaintiff's witness and the Co-op store, and to state what they showed and indicated with respect to the delivery of lumber by Ralph Lewis and the credits given him therefor—was equally hearsay and inadmissible. Thus, the fact that lumber was not delivered by the plaintiff's witness to the Co-op store the next morning after the accident, as testified to by him, and that no delivery of lumber was

made by him until some time thereafter, was not proven by the testimony of the witness Hanson, nor by any evidence, except by the books of the Co-op store.  We think that was error.

It is claimed, however, that the rule as stated is not "inflexible," in support of which references are made where entries in books of strangers, used to refresh or aid the memory of a witness, or entries made in regular or due course of business, were admitted.  The rule admitting books of account as primary and independent evidence of the facts therein recited, as was here done, is one thing.  The rule permitting a witness to refresh or aid memory by referring to entries in books of account, or other books, documents, writings, or memoranda, is another and wholly different thing.  When the memory of a witness may be refreshed, and the circumstances or conditions under which the book, document, or memorandum used for that purpose may then be put in evidence, not as primary and independent evidence of the facts therein recited but in connection with the testimony of the witness, is stated and illustrated in 11 Ency. Ev. under the heading "Refreshing Memory," especially on pages 95, 136, 137, and 142.  The familiar rule as there stated clearly shows that no sufficient or any foundation was here laid to permit the books to go, nor were they offered or received in evidence on any such theory, or for any such purpose.  The record shows that the witness testifying to the contents of the books was not asked to refresh, nor did he aid, his memory by referring to the books; nor did he give any testimony concerning the delivery of lumber by plaintiff's witness, nor as to credits given him, except to identify the books and to state their contents to the jury.  So is the distinction between books and accounts, and entries made in regular and due course of business, marked and well settled.  5 Ency. Ev. 255.  They both are exceptions to the hearsay rule.  The misapplication of the one cannot be excused or vindicated by pointing to the other.  So, of course, may a witness, who testified having made or seen, or otherwise testified concerning, an entry or statement

in a book or instrument, be contradicted by the book or instrument itself, in which case it matters not whether the book or instrument be that of one of the parties, or of another. But the question in hand is not that, nor when books may be used to refresh or aid memory and then be put in evidence, or when the entries made in due or regular course of business are admissible; but when may entries in books of account, not referred to or used to refresh or aid memory, be put in evidence as primary and independent evidence of the facts so entered and recited? We think they are inadmissible for such purpose, and hearsay, when they are, as they were here, entries in books of account of a third person of transactions or accounts between him and others not parties to the litigation. We do not find the authorities discordant as to this. To regard the rule as here inapplicable is, we think, to disregard the basic principles upon which the shop-book rule rests, and to unsettle long and well-established rules of evidence.

We are also of the opinion that the ruling was prejudicial. *East Tenn., V. & G. R. R. Co.* v. *Daniel, supra; Cooper* v. *Hopkins,* 70 N. H. 271; 48 Atl. 100. As is contended by the defendant, and as we hold, the fact as to whether        4 the plaintiff's witness delivered lumber to the Co-op store as testified to by him was material; the defendant says, "of vital importance." But, as has been seen, the only evidence by which the defendant disproved or contradicted that testimony was by incompetent and hearsay evidence. It did not disprove it, nor offer, nor attempt to disprove it by any other evidence. Where thus a material fact is established by competent evidence on the part of one litigant, and against his objection his adversary is permitted to contradict or disprove it by nothing but incompetent and hearsay evidence, prejudice will not only be presumed, but appears. The natural tendency of such evidence, under such circumstance, is harmful. To say that it did not have any harmful effect is conjectural and speculative.

The judgment of the court below is therefore reversed, and the case remanded for a new trial. Costs to the appellant.

FRICK, J.

I concur.  My first impression was that the legal effect of what was permitted by the trial court amounted to no more than to permit the witness Hanson to refresh his memory from what was contained in the books offered in evidence. After a careful examination of the record, however, and upon further reflection, I am forced to the conclusion that what was actually permitted was the introduction of the Farmers' Co-op books as primary evidence of the facts therein recited.  Mr. Hanson did not make the entries in the books, nor was he asked, nor did he testify, as to the correctness of the entries; hence what was done was not an attempt to refresh the witness' memory from past events. but it was an attempt to prove a fact which we have held was material and relevant by book entries which, as to the appellant, were hearsay pure and simple.  This constituted error according to all authorities.

Nor are the cases of *Davenport* v. *Cummings*, 15 Iowa 219, and *Costello* v. *Crowell*, 133 Mass. 352, and other authorities cited by the Chief Justice, in point here.  A mere cursory reading of the excerpts quoted by him alone shows that what was held in those cases in no way supports the rulings of the trial court in this case.  Neither do the first two illustrations offered by the Chief Justice answer appellant's objections to the book entries involved here.  This is so for reasons so obvious that it requires no further comment.  Upon the other hand, while the illustration with regard to the hotel register would, under certain circumstances, be proper evidence, yet, again for obvious reasons, that illustration does not come within the rule laid down by Mr. Justice STRAUP, and hence can have no controlling influence here.

Nor can the entries in the Farmers' Co-op books be used to impeach the statements of the witness Lewis.  He did not make the entries in the books.  Nor did he testify that any were made, or that he saw any made; nor that, if made, they were correct.  Nor did he testify to anything concerning any entry or statement in the Co-op books.  All that was testified to in such particular by him was that he delivered the load of lumber to the Co-op store, and that he was

not paid therefor, but was given credit for it. In fact, there is nothing in the record whatever to indicate that he saw or even knew of the entries contained in the books, or that he testified concerning any such subject. It needs no argument to show that a witness may not be impeached by the declarations or statements of a third person where such witness knew nothing concerning the statements. The book entries in question here represent the statements or declarations of a third person not made in the presence of the witness Lewis and of which, so far as the record discloses, he had absolutely no knowledge and no connection therewith.

Under the circumstances, therefore, there is no escape from the conclusions reached by Mr. Justice STRAUP.

McCARTY, C. J. (dissenting).

I think the judgment should be affirmed. Ralph Lewis testified that as he was passing the railroad yards at Thistle, Utah, with a team and a wagon loaded with lumber, he saw the accident in which the plaintiff received the injuries described in the complaint. It is admitted that the accident occurred January 5, 1911. The witness further testified:

"I was taking lumber to Spanish Fork for the Farmers' Co-op. I reached Spanish Fork after night and made delivery of the lumber next day. Q. When did you draw your pay for it, if you got any? A. Why, we just put it on credit there. We had a Farmers' Co-op and we had credit there. Joseph Hanson runs the Farmers' Co-op. He was the man with whom I did the business."

It will be observed that the witness accounted for his presence at Thistle at the time the accident occurred in which plaintiff received the injuries complained of, by stating that he, at the time, was passing through Thistle with a load of lumber which he delivered to the Farmers' Co-op of Spanish Fork the following morning. The import of his testimony is that he was given credit on the books of the Farmers' Co-op for the lumber. It will be observed that the witness made a somewhat detailed statement concerning his movements and as to what he did immediately after the accident as corroborative and in aid of his testimony that he

was at Thistle and witnessed the accident. The books showed
that he did not have an account with the Farmers' Co-op
on January 6, 1911, but they did show that he opened an
account February 23, 1911, and was first given credit for
lumber May 11, 1911. For the purpose of showing, or tend-
ing to show, the improbability of the truth of Lewis' testi-
mony on this point, defendant had the right to show that
the witness was not given credit on the books of the Farmers'
Co-op for the lumber which he claims he delivered to that
institution the day after the accident occurred. In one of
the prevailing opinions it is said that:

"He (Lewis) did not make the entries in the books.   *   *
*  In·fact, there is nothing in the record whatever to indi-·
cate that he ever saw or even knew of the entries contained
in the books."

It is quite evident that Lewis did not make the entries,
and it is also very clearly shown that "he never saw or even
knew of the entries (regarding which he testified) contained
in the books," because the record conclusively shows that the
books contained no such entries of that date. It is also sug-
gested that he did not testify that he saw the entries made,
or, if they were made, they were correct. What he did tes-
tify, as shown· by the bill of exceptions, was that on the day
after the accident in question he delivered a load of lumber
to the Farmers' Co-op and was given credit for it. He said,
"We just put it (referring to the payment for the lumber)
on credit there." This was a direct and positive statement
of the witness that he was given credit for the lumber. It
was to impeach him on this point that the book entries were
admitted in evidence. The books having been offered and
admitted for the purpose of impeachment only, the question
of whether the entries therein contained were correct or in-
correct was, under the circumstances, wholly immaterial.   4
Chamberlayne, Ev., section 2685. If the alleged transaction
of the delivery of the lumber on January 6, 1911, and the
giving of credit therefor by the Farmers' Co-op on its books,
were the subject-matter of the action, then of course the ques-
tion of whether the entries in the books respecting such

credit were correct or incorrect might be of controlling importance, and the shop-book rule in such case might properly be applied. It is the invoking of that rule in this case, where I contend it can have no application whatever, that gives rise to the difference of opinion respecting the disposition that should be made of the case on this appeal.

The books constituted the best evidence of what they contained and did not contain. In 2 Wigmôre, section 1531, the author says:

"The absence of an entry, when an entry would naturally have been made if a transaction had occurred, would ordinarily be equivalent to an assertion that no such transaction occurred, and therefore should be admissible for that purpose."

And again, in section 1556, he says:

"The absence of a debit entry in a book containing both debits and credits should be regarded as in effect a statement that no such goods or services had been received, and should therefore be admissible."

I also invite attention to a note in Ann. Cas. 1914B, 1256, where the annotator cites and reviews many cases in which the question of whether private books or records are admissible as evidence of the non-existence of matters not entered therein is discussed. In concluding his review of the cases, the compiler, among other things, says that:

"Private books and records are sometimes admissible as evidence of what they do not contain in corroboration or contradiction of other evidence."

I recognize the general rule to be that entries made in books of a third party of accounts and transactions between persons who are not parties to the proceedings before the court are not admissible in evidence, but I do not understand the rule to be an absolute or inflexible one. The authorities, as I read them, make a distinction in the application of the rule between cases where entries in private books of account are offered as evidence for the purpose of contradicting the testimony of a witness who, in aid of his testimony given in

a matter—the subject-matter of the action—that has no con-
nection with or relation to the books or the entries therein
contained, and cases where the entries are offered for the
purpose of maintaining or defeating some claim based upon
the transactions concerning which the entries were made.    In
the class of cases first referred to, the books of third parties
are admissible; whereas, in the class last referred to they are
not admissible as evidence.    The books in question tended to
contradict the testimony of Ralph Lewis on a material point,
and were offered and admitted in evidence for that purpose
only.    As was held in the case of *Dale* v. *Kempton*, 46
Vt. 76:

"In this respect, and for such a purpose, the introduction of the
books bears no analogy to the use of books as evidence to prove
the sale and delivery of merchandise, or to prove any other trans-
action upon and in virtue of which the party claims the right to
make a charge, and to hold the other party liable."

Passing the informal way in which the entries in the books
in question were offered and received in evidence, I am
clearly of the opinion that the court did not err in admitting
them.

This question was involved in *Davenport* v. *Cummings*,
15 Iowa 219.    There the court, in the course of a well-consid-
ered opinion, said:

"It is claimed that books of account are admissible as between
the parties to them and to the suit in which they are offered.
But when witnesses refer to books in aid of their statements, and
especially when, as in this case, they state that they only know
certain matters from having seen them in the books, such books
are clearly competent to show the improbability of, or mistake in,
their testimony.    It is the same as if they had referred to any
other memorandum or writing.    *Who made such memorandum is
not material.*    *   *   *   When the books referred to by the witness
were sufficiently identified, they were properly admitted."    (Italics
mine.)

A question similar to, if not identical with, the one here
presented, was involved in *Costello* v. *Crowell*, 133 Mass. 352.
In that case the action was brought to recover on two prom-
issory notes.    The defense was that both notes were forgeries.

Judgment was rendered in favor of the plaintiff on one note, but denied him as to the other. The court said:

"The remaining exception of the plaintiff is to the admission of the entry in the books of Korrf & Co. to prove the date of the delivery of the blanks by them to Groom & Co., on one of which the note in suit was written. (Korrf & Co. was not a party to the action, nor was it directly or indirectly interested therein.) These entries were first used to refresh the memory of the witness Armstrong. They were clearly competent for that purpose. * * * This use of the entry did not make it evidence, nor authorize it to be submitted to the jury, unless for the purpose of testing the memory which had been refreshed by it. Subsequently the defendant offered the book itself in evidence, and it was admitted, and the entry read to the jury. We think it was properly admitted. Armstrong testified to the delivery of the blanks, but he could not, from recollection, fix the date, which was a material fact. For the purpose of doing this, the entry made by the witness at the time of the transaction, in the regular course of business, was competent."

In 2 Wigmore Ev., section 1005, the author says:

"When the memory is tested by asking for the witness' recollection of facts not otherwise material, his errors of recollection cannot be shown by extrinsic testimony. But circumstances which form the alleged grounds of his recollection of material facts testified to by him should be subject to contradiction. * * * In general, the exclusionary rule seems to be too strictly enforced. 'Everything,' said Lord Denman, 'is material that affects the credit of the witness.' The discretion of the trial court should be left to control. *It is a mistake to lay down any fixed rule which will prevent him from permitting such testimony as may expose a false witness.* History has shown, and every day's trials illustrate, that not infrequently it is in minor details alone that the false witness is vulnerable and his exposure is feasible." (Italics mine.)

I know of no good reason, and certainly none has been suggested, why books that contain no entries regarding the subject-matter in litigation should be received in evidence for the purpose of impeachment when such books belong to and are kept by one of the parties to the suit in which they are offered, and rejected as incompetent if perchance they belong to and are kept by persons not parties to the action. For the purpose of illustrating the unsoundness of such a rule and the injustice that may often result from its appli-

cation, we will suppose a case is on trial in which it is neces-
sary for one of the parties to the suit, in order to maintain
the action or establish a good defense thereto, as the case
may be, to prove that a certain transaction—the subject-
matter of the action—took place in this city on January 5,
1911. A witness is called by the party seeking to make such
proof, and testifies that he was in the city on that date, was
present, heard, and saw all that transpired relating to the
transaction, and relates in detail what he claims the circum-
stances were. On cross examination he testifies that he has
a clear and distinct recollection as to the date because the
transaction occurred on the day he arrived in the city,
namely, January 5, 1911; that just before he witnessed the
transaction he opened an account with a certain local bank
by making a deposit of money; that he then witnessed the
transaction in controversy, and immediately thereafter he
went to the office of a certain real estate firm and leased a
cottage by the month, paying one month's rent therefor in
advance; that he saw one of the clerks in the office make an
entry in the books of account kept by the firm crediting him
for the rent paid. The other party to the action discovers,
on investigation, that the records of the bank show that the
witness opened an account with the bank February 11, 1911,
and that he never had an account with the bank prior to that
date. He also discovers that the books of the real estate firm
from whom the witness leased the cottage show that that
transaction also took place February 11, 1911, and fail to
show that he did any business with the firm prior to that date.
The employés of the bank with whom the witness claims he
did the business when he made the deposit of money are called
as witnesses, and testify that they have no recollection what-
ever of the transaction and have no knowledge respecting it
except what the books show. To further illustrate: A party
is charged with and is on trial for a heinous crime. His de-
fense is an alibi. Two or more witnesses called by the de-
fendant to prove the alibi testify that on the day the crime
is admitted to have been committed they were with the de-
fendant at a town or city several hundred miles from the
place where the crime was committed; that on that day they,

in company with the defendant, registered and put up at a
certain hotel in such town or city; that they saw the defend-
ant write his name in the hotel register; and that they were
with him during that entire day.  It transpires that neither
defendant's name nor the names of his witnesses appear in
the hotel register.  The clerk at the hotel who was the cus-
todian of the book (the register) is called as a witness, but
is unable to remember whether the defendant and his wit-
nesses, or any of them, were at or about the hotel on the date
specified in the evidence.  Under these circumstances, I think
it is clear that the records of the bank and the books of the
real estate firm and the hotel register, on being properly
identified, would be admissible as evidence for the purpose
of contradicting and impeaching the witnesses who, in aid
of their testimony given on the issues pertaining to the sub-
ject-matter of the action, referred to certain transactions
which they claimed were entered in the books.  In fact, I
think it would be a reflection on our system of jurisprudence
to hold, under such circumstances, that in the one case a
litigant must be the victim of perjured testimony and his
property rights thereby sacrificed and taken from him, and
in the other case that crime must go unpunished because of a
strained and in my judgment unreasonable application of a
court-made rule of law—a rule that was promulgated to pro-
mote justice and never was intended, as I read the authori-
ties, to be applied so as to shield a corrupt and designing
witness in giving false testimony.  Moreover, to hold in such
cases that when the books offered as evidence belong to and
are kept by a third party they are, under the shop-book rule,
inadmissible, but when they belong to and are kept by one of
the parties to the action or proceeding they are admissible
as evidence, even though they contain no entry concerning
the subject-matter of the action, as I view the question, is to
reduce the rule to an absurdity.

Since the foregoing was drafted and submitted to my As-
sociates, it is suggested in the concurring opinion written by
Mr. Justice FRICK that the foregoing illustration regarding
the hotel register does not come within the rule laid down by
Mr. Justice STRAUP in the prevailing opinion.  If not, why

not? It is common knowledge that the hotel register is one of the most important and indispensable of books of account kept by hotels. Upon this book the day, and, in many instances, the time of the day, is noted when parties become guests at the hotel, the number and grades of the rooms occupied by the different guests, and also the time when a guest severs his connection as such with the hotel. To hold that in this class of cases a hotel register is admissible as evidence, but that books of account of other business institutions are not, is to make a distinction where, in principle, there is absolutely no difference.

Mr. Justice STRAUP, in the prevailing opinion, states:

"So may a witness who testified having made or seen, *or otherwise testified concerning, an entry* or statement in a book or instrument, be contradicted by the book or instrument itself, in which case it matters not whether the book or instrument be that of one of the parties, or the witness, or of another." (Italics mine.)

This is a clear and concise statement of the law as I understand it to be; and the case at bar, I think, comes clearly within it. I again invite attention to the testimony of Lewis wherein he said, referring to the terms on which he claims he delivered a load of lumber to the Farmers' Co-op on January 6, 1911, "We just put it on credit there." This, in a literal sense, is a statement that he, at least, assisted in making the entry giving credit for the lumber. I think, however, a fair construction of the language, under the circumstances, is that he was present, saw the entry made, and acquiesced in what was done in that regard. Let that be as it may, he not only testified "concerning" the alleged entry, but that he had something to do with the making of it. Therefore I insist that this case comes within the rule of law so well stated by Mr. Justice STRAUP in the concluding part of the prevailing opinion.

ON APPLICATION FOR REHEARING.

STRAUP, J.

A petition for a rehearing is filed by the respondent. Our attention is called to the testimony of another witness, the bookkeeper of the Co-op store, by whom it is claimed it was

shown the books were properly authenticated and that the entries were made by him in due course of business. It is claimed we overlooked this testimony, and hence the case ought to be reopened, reargued, and re-examined, especially on the question of whether the entries in the account books were not properly received in evidence as entries made in regular or due course of business. It is apparent from the opinion that we did not hold the books inadmissible because they were not properly authenticated or not shown to be account books of original entries or not regularly kept in due course of business, but because the books confessedly are account books, and nothing else, of a third party as to transactions with another, both of whom were strangers to both litigants, and, as such, do not come within the exception to the hearsay rule admitting account books in evidence as primary and independent evidence of the facts therein recited. The testimony of the bookkeeper was not overlooked. It, as we then thought, and as we still think, added nothing whatever to the question in hand. But let us again look at it. After showing that the witness was the secretary, treasurer, and bookkeeper of the Co-op store, he was then asked by respondent:

"Q. Will you be good enough to tell me whether this book contains the account of Ralph Lewis? A. Yes, sir. Q. Is that the book of account of the Farmers' Co-op? A. Yes, sir. Q. And will you turn to Ralph Lewis' account? A. Yes, sir. Q. I will ask you if you now have turned to the page beginning his account? A. Yes, sir. Q. It begins on what date? A. The account was opened up February 23, 1911. Q. Let me ask you if the entries on that sheet you are now looking at are in your handwriting? A. Yes, sir. Q. When credits are given men who have an account with you, on account of any materials that may be delivered, and received by you as a credit, who enters them on the books? A. On these books? Q. Yes. A. I do. Q. Do you find any credit for lumber delivered by Ralph Lewis? A. Yes, sir. Q. On what date? A. May 15, 1911."

He gave similar testimony as to an account with Lewis Bros., and when, as shown by the books, the first and the last credit was given them.

Upon this, counsel contend that the entries were admissible on the theory of another well-recognized exception to the hearsay rule—entries made in due or regular course of business. By that is meant entries made in a record, book, or document setting forth a fact or transaction made by one in the ordinary course of his business, employment, office, or profession, which it was his duty in such manner to make, and who had personal knowledge of the facts entered, or, as put by some of the cases, had a duty to inform himself of the truth of the matters recorded or entered by him, and that the entries were made reasonably contemporaneous with the facts or transactions entered or recorded. And then, the further general rule in such respect is that, before such entries are admissible, it is essential to further show that the entrant was dead, insane, permanently beyond the jurisdiction of the court, or was otherwise unavailable as a witness; or, as some of the authorities and cases say, if living and present at the trial and called to give testimony, had forgotten the facts entered and thus was unable to recall them or to revive his memory by looking at the entry, but, nevertheless, was able by his oath to authenticate it and to testify that it was made by him at or near the time of the transaction, in the due or regular course of his duty or business, and that he then had knowledge of the facts entered and correctly entered and recorded them, or that he would not have made the entry if it had not been true. 5 Ency. Ev. 264-266; 1 Elliott, Ev., section 488; 2 Jones, Com. Ev., sections 319, 320, 321, and cases there referred to. It, however, is more proper to say in such latter instance, the entrant living and called as a witness, that the entry made by him serves the purpose only of a document or memorandum to refresh memory, and is more properly within the rule as stated in 11 Ency. Ev. 137, under the head of "Refreshing Memory," that:

"When the witness' memory is not so revived, but he is able to swear as to the authenticity of the writing, his testimony and the writing in connection with each other are both competent evidence."

And so, counsel have referred us to a number of cases where entries, made by one, a stranger, in due or regular course of business, were admitted, but where it was also shown that the entrant was dead, or was beyond the jurisdiction of the court, or was otherwise unavailable as a witness; and to other cases, where the books were those, not of a stranger, but of a party, or where the party, not the witness, against whom they were offered was privy to the books. And then, are we especially referred to notes in 53 L. R. A. 526, where it is shown that entries in due course of business in account books of a stranger had been admitted. The general rule, as there stated, is:

"The earlier cases tended in the direction of regarding no entries in books of account as admissible in evidence on issues between third parties, unless they were against the interest of the party making them, or such as to constitute a part of the *res gestae.* But the tendency of the later cases, particularly in America, has been to eliminate the condition that the entry should be against interest; and the more modern rule would seem to be that entries and memoranda made by a person in the ordinary course of his business, of acts or matters which his duty in such business requires him to do for others, are, in case of his death, admissible evidence of the acts and matters done."

After illustrating the rule by notes and cases for several pages, the annotator then, on page 540, says this:

"While the rules as to admissibility of proper entries in books of account on issues between third persons are as above stated, such rules do not apply, and entries in such books are not admissible until the proper preliminary proof has been given, which must establish their accuracy and originality, and that they were duly and properly made at or near the time of the transaction, and that the clerk or person who made them is either dead or not within reach of process."

Here the bookkeeper, the entrant, was not dead, nor insane, nor beyond the jurisdiction of the court, or otherwise beyond reach of process, or unavailable as a witness. He was present at the trial and was called as a witness. So the entries were not admissible on the theory that the entrant was unavailable as a witness.

Now, were they admissible on the theory that when made he had knowledge of the facts entered, but looking at the entries his memory was not revived and the facts not recalled? Manifestly not, for no such preliminary proof was made and no such foundation laid. We think that hardly debatable. We have set forth what there is of it. The witness was not asked, nor was it shown, what, if any, present knowledge he had of the facts entered, or whether his memory was revived by looking at the entries, and if, aided by them, he could recall and testify to the facts, or had knowledge of them when the entries were made, but had so forgotten the facts that his memory was not revived and the facts not recalled, still knew the entries were correctly made in the due course of business or of his duty, and reasonably contemporaneous with the transaction, or that he would not have made them had they not been true. Nothing of that was even attempted to be shown, especially that the witness had not present knowledge of the facts, or with or without the aid of the entries could not recall nor testify to them. The record but shows that this witness did no more than did the witness Hanson, merely read to the jury, without the preliminary proof referred to, the contents of the books as primary and independent evidence, just as though the books had been a party's book. That is all there is to it. And that is what we say was improper.

Let the petition be denied.

FRICK, J., concurs.

McCARTY, C. J. (dissenting).

In view of the elaborate briefs filed by the respective parties in which the questions presented by the petition are thoroughly and somewhat exhaustively discussed and the position of counsel clearly stated, I do not think anything would be gained by reopening the case for further oral argument. I am of the opinion, however, that the case should be reconsidered by this court, and the judgment of the lower court affirmed.