## DAVENPORT V. CUMMINGS.

1. ADMISSIBILITY OF BOOKS OF ACCOUNT. When witnesses refer to books of account in aid of their statements, and especially when they state that their only knowledge of certain matters is derived from such books, the books are admissible in evidence for the purpose of showing the improbability of, or a mistake in, their testimony; and it is not necessary when they are offered for this purpose to make the formal proof required by § 3999 of the Revision of 1860.

2. SAME OF ANSWER OF GARNISHEE. An affidavit executed by the plaintiff as an answer in garnishment in another action, is admissible in evidence as an admission made by the party, though not taken in accordance with the provisions of the statute, the genuineness of the signature being first proved or admitted.

3. SAME. The admission of an affidavit as evidence, upon an insufficient showing of the genuineness of the signature, is not good ground of reversal when it appears that subsequent to its admission the genuineness of the signature was established.

4. OBJECTION NOT MADE BELOW. The Supreme Court will not reverse a judgment for the reason that the instructions given by the Court were not written in the form prescribed by § 3052, Revision of 1860, when it is not shown that this objection to the instructions was not presented to the Court below.

5. FRAUDULENT MORTGAGE. The intent of the parties to a mortgage, in executing the same, to hinder and delay the creditors of the mortgagor, in the collection of their claims, renders the mortgage void as to existing creditors, notwithstanding there was no actual intent to defraud.

6. EVIDENCE OF FRAUD. Fraud in the execution of a mortgage may be shown by direct and positive evidence, or may be inferred from facts and circumstances established by a preponderance of testimony.

7. BADGE OF FRAUD: CONSIDERATION. That a mortgage on its face purports to be for a larger consideration than the one which actually passed between the parties is a badge of fraud.

8. WAIVER. The right of the jury to take with them, when they retire to consider upon their verdict, books of account received in evidence, may be waived by the parties.

9. THE TAKING OF DEPOSITIONS TO JURY ROOM. A judgment will not be reversed on the ground that the jury, when they retired to consider upon the verdict, took with them a deposition which had been read in evidence, it appearing that the fact was known to the appellant while the jury were in consultation, and that he made no objection thereto, and that the

deposition had been offered by him in evidence on the trial. (*Turner* v. *Kelley*, 10 Iowa, 573; *Shields* v. *Guffey*, 9 Id., 322.)

10. AFFIDAVITS IMPEACHING VERDICT. Affidavits of jurors showing that they misunderstood the instruction of the Court, should not be received for the purpose of impeaching the verdict.

*Appeal from Dubuque District Court.*

WEDNESDAY, OCTOBER 14.

REPLEVIN. Plaintiff claims, under a chattel mortgage, made to him by Langworthy, in June, 1861, purporting to secure a note of $700, due in two years. Defendant (as sheriff) claims and justifies, under an execution against said Langworthy, in favor of Freeland, Squires & Co., insisting that the mortgage to plaintiff was executed without consideration; that such disposition was unreasonable and made to defraud, hinder and delay the creditors of the mortgagor. To this issue the testimony was all directed. Verdict and judgment for defendant; and plaintiff appeals.

*Bissell & Shiras* for the appellant.

1. The Court erred in admitting the books of J. L. Langworthy & Bros., to be received in evidence.

2. The admission of the answer of the plaintiff in the garnishment proceedings was also erroneous. Rev., 1860, §§ 3200, 3201.

3. The intent to hinder and delay creditors, in the absence of an intent to defraud, does not render the mortgage void. The hinderance and delay must be with the intent to defraud.

4. The jury took the deposition of a witness with them to the jury room. Rev., 1860, § 3068.

*Griffith & Knight* for the appellee.

I. The first point made by appellant will not be considered, for the reason that the ground of objection to the

ruling of the Court below is not stated in the bill of exceptions. Rev., 1860, § 3107; *Thompson* v. *Blanchard*, 2 Iowa, 47; *The State of Iowa* v. *Wilson*, 8 Id., 411. The books were competent evidence to disprove statements in reference to them made by witnesses.

II. The signature being proved the affidavit of the plaintiff was properly admitted.

III. The intent to hinder and delay creditors will avoid a mortgage. Rev., 1860, § 4395; *Reynolds* v. *Nichols & Co.*, 12 Iowa, 398; 1 Pars. Con., 2d ed., 382, notes *b* and *a*; *James* v. *Doe*, 9 Ind., 464; *Wheeldon* v. *Wilson*, 44 Me., 20; *Miller* v. *Bryan*, 3 Iowa, 59.

IV. Direct and positive evidence of fraud is not necessary, for it may be inferred from circumstances. *Miller* v. *Bryan*, 3 Iowa, 59; *McConihe* v. *Sawyer*, 12 N. H., 402; *Glasgow* v. *Copland*, 8 Mo., 268; *Belden* v. *Harriques*, 8 Cal., 87.

V. The affidavits of the jurors, showing that they misunderstood the instructions of the Court, are not admissible to impeach a verdict. *Cook et al.* v. *Sypher*, 3 Iowa, 486; *Tucker* v. *The Town Council of South Kingston*, 5 R. I., 560; *Raphael* v. *The Bank of England*, 5 Eng. L. and E., 276; *Tyler* v. *Stevens*, 4 N. H., 116; *Walker* v. *Kennison*, 34 Id., 257; *Bridge* v. *Eggleston*, 14 Mass., 244; *Turner* v. *Kelley*, 10 Iowa, 574.

WRIGHT, J.—I. Plaintiff claimed that the consideration for the note of $700 was $315, in money, and a check on Langworthy & Bro. for $385. This claim seems to have been controverted, and plaintiff and another witness spoke of this check as being charged against him on the books of the bank, and referred to such books as showing the amount of the check and its payment. It was also a controverted point whether plaintiff, at the time, had any funds upon which to draw. Defendant introduced these books for the

purpose of showing the state of the account. This was objected to, and their admission is the first error assigned. It is claimed that books of account are only admissible as between the parties to them and to the suit in which they are offered. But when witnesses refer to books in aid of their statements, and especially when, as in this case, they state that they only know certain matters from having seen them in the books; such books are clearly competent to show the improbability of, or a mistake in, their testimony. It is the same as if they had referred to any other memorandum or writing. Who made such memorandum is not material. Nor is it necessary, in such a case, to introduce the formal proof required by § 3999 of the Revision of 1860. When the books referred to by the witnesses were sufficiently identified, they were properly admitted. This proof was made, and in this ruling, therefore, the Court did not err.

II. A paper purporting to be signed and sworn to by plaintiff, was offered in evidence by defendant; objected to, and the objection overruled. An execution was issued upon a judgment against Langworthy, to the Sheriff of Jones county. The paper now under consideration purports to be the answer on examination of plaintiff, as garnishee, under said execution. The point made is, that the answer was not taken in accordance with any law of the State; that no direction in writing was given by the plaintiff, in execution, to take said answer; that without such direction the whole proceedings by the Sheriff were unwarranted; and that until the signature was proved, the paper could not be admitted. It is conceded that if the signature was proved, the answer was properly received as an admission made by plaintiff. And this proof we are clearly satisfied was made. Plaintiff himself, in his deposition, which had been read to the jury, said that his answer (for there was none other) was taken in writing, read over to

Davenport v. Cummings.

and signed by him. In an affidavit filed after verdict, to obtain a new trial, he seeks to impeach the correctness of this answer, and says he never should have signed it, had it been read to him. It will thus be seen that after verdict he does not deny the signature, but seeks to invalidate it for an alleged fraud. Evidence of the genuineness of a signature, when offered for the purpose of introducing a written instrument to the jury, is addressed to the Court. And though it may not have been sufficient at the time of such introduction, if its genuineness is afterwards established, this Court will not reverse the cause, it thus being shown that the error was without prejudice.

III. It is next claimed that the Court erred in giving the following instructions, asked by defendant.

"1. If from the circumstances found you are satisfied that the mortgage, under which plaintiff claims, was made by Langworthy, and received by plaintiff, with intent or understanding between them to defraud, or hinder, or delay the creditors of the mortgagor, and that, at the time the creditors, in the execution under which the levy was made, were existing creditors of said mortgagor, you will find for defendant, and this without reference to what may have been the consideration of the mortgage.

"2. The intent or understanding of the parties to the mortgage, if any such was had by them, at the time of making the same, to hinder or delay the creditors of Langworthy, will be sufficient to render the mortgage void, notwithstanding there may have been no actual intent to defraud; and if you believe that the intent or understanding of the parties, as before stated, was to hinder or delay the creditors of Langworthy, you must find for defendant.

"3. It is not necessary that there should be direct and positive evidence of the intention of the parties to the mortgage, at the time it was made, to hinder, delay and defraud creditors. It is competent for a jury to find a conveyance

or mortgage fraudulent upon evidence tending *to* show fraud, although there may not be direct evidence of the fraud.

"4. If you believe that the mortgage was made for a larger sum than was owing, this is a circumstance from which fraud might be inferred, and if you believe the mortgage fraudulent, in view of all the testimony, you will find for defendant."

Preliminarily, it is urged by appellant, that these instructions should have been refused, because more than two were written on one sheet of paper, in violation of § 3052 of the Revision of 1860. It is sufficient to say that there is nothing in the record to sustain this proposition. But if there was, we should certainly not be inclined to disturb a judgment, upon this ground, where the objection was made for the first time in this Court.

The point of difference as to the law of the instructions, numbered one and two (as above quoted) is, we think, correctly stated by appellee's counsel thus: Plaintiff claims that a mortgage made and received with the intent to hinder or delay creditors is not invalid, but that an actual intent to defraud must be shown in addition to the intent to hinder or delay. This is denied by appellee, he claiming that an actual intent to defraud is not necessary.

Every mortgage may be said, in some sense, to have the effect of hindering or delaying other creditors in the collection of their debts. To the extent of the incumbrance it deprives other creditors of the right to resort to such property in the collection of their debts. And the same may be said, though not perhaps to the same extent, of every debt which a debtor may contract. Such debts may decrease the chances of existing creditors to make their money, for while the debtor's property may remain the same, the aggregate indebtedness may largely increase. It is not in this sense, however, that these instructions are to be under-

stood. Such instances leave out of view the essential element, to wit: the question of intention. If there is no intention to hinder or delay creditors, there is no legal wrong. It is the intention to do that which is illegal, that makes the conveyance fraudulent; and not simply the doing an act which, without the wrong intent, may result in the same thing.

Our criminal statute punishes with fine and imprisonment any one who puts in use, whether as a party or privy, any instrument conveying or creating a charge upon any interest in lands, goods, &c., with intent to defraud prior or subsequent purchasers, or to hinder, delay or defraud creditors, or other persons. § 4395. The words "fraudulent conveyance," in the latter part of the section, clearly shows that the intent to hinder, delay or defraud, will impress the instrument with the fraudulent character. To do either, therefore, is punished by the statute. Such punishment or penalty implies prohibition, and that which is prohibited under a penalty, if done, is void. The intent to hinder or delay is a legal fraud, as much so as the actual intent to defraud. And thus understood, the instructions are unobjectionable.

If the third instruction can fairly be construed as meaning that a preponderance of evidence was not required in order to invalidate the mortgage, but simply evidence, however slight, tending to show fraud, it would certainly be erroneous. There is a great difference between the admissibility of evidence upon the ground that it tends to establish a particular fact, and treating the fact as established by such testimony, though it is entirely overcome and rebutted by other facts and circumstances, or positive and direct evidence. So, while it is quite correct to say that fraud may be inferred from circumstances, if the preponderance of evidence establishes it, and that direct and positive evidence of the fraudulent intent is not required,

it is quite a different thing to say that if the testimony tends to prove a fact, the instrument is, therefore, necessarily void. Testimony which "tends" to prove an issue may be said to contribute to its establishment; to be directed to that end; to aim at it; to assist in giving a leaning to the mind of the jury in its consideration or determination. But that which is directed to an end, or aims to do a thing, may not necessarily do it; indeed, it may assist but little. But while as testimony it may be received or heard, if it has this tendency, it is by no means to be treated as conclusive, or as necessarily warranting the fact which it tends to establish. The ultimate fact must be established, either by direct and positive evidence, or by such facts and circumstances as justify its inference. Direct and positive evidence cannot, with a critical regard to accuracy, be spoken of as tending to prove an issue. Such language, as applied to cases of fraud, has more appropriate reference to those facts and circumstances which, while they do not necessarily establish it, justify its inference.

In view of these suggestions, what construction shall be placed upon this instruction? It is certainly very skillfully worded, but we do not think, after all, it can fairly be construed to mean more than that it was competent for the jury to infer fraud from testimony tending to show it, though there might not be direct and positive evidence of the fact. The language is not that the mortgage would be fraudulent if the testimony tended to give it the character, but that the jury might infer it from such testimony. The whole instruction must be taken together. As thus received, the words "direct and positive" have weight, and show the sense in which the word "tending" was used. How strong the tending testimony should be, to justify the inference of fraud, is not stated. It is not fair to assume, however, that the Court meant that if it had

any tendency in that direction, however strong the rebutting circumstances, they must find the conveyance fraudulent. The language should receive a reasonable construction, in view of all the circumstances, and not a strained or forced one.

IV. It is unquestionably true that if A made a mortgage to B for a sum larger than was owing, it would tend, in the absence of explanatory proof, to show an unfair and fraudulent purpose. A flagrant case might be required, if there was no other badge of fraud, to justify the conclusion that the parties from this fact intended to defraud creditors; but a fraudulent purpose might be inferred from it. It is proper to be considered as one of the badges of fraud. The fourth instruction means nothing more than this, and is, therefore, not erroneous.

V. While it is the undoubted right of the jury to take with them, in their retirement, all books of account, received in evidence under the circumstances provided for and limitations contained in § 3068, this right may be waived by the parties. In this case the jurors, after leaving the box, sent their bailiff for such books. A controversy arose between counsel, as to what evidence of this character had been offered. The truth in the premises is not certified in the bill of exceptions, but we are left to infer the facts from certain affidavits of counsel. From these we cannot resist the conclusion that the Court and opposite counsel understood that appellant's counsel, in view of the misunderstanding and controversy, consented that all books should be withheld. This was in open Court and was none the less binding nor entitled to less weight before us, for not being reduced to writing. Rule 88 of the District Court, cited by counsel, has no application to such an agreement.

VI. It is objected that the jury took with them the deposition of plaintiff and appellant, which is expressly

prohibited by § 3068 of the Revision of 1860. It is shown, however, that appellant's counsel knew this fact soon after the jury retired, and instead of objecting, assented to it. This deposition was in every respect favorable to the party making the objection. Indeed, it was his own testimony. The cases of *Turner* v. *Kelley*, 10 Iowa, 574, and *Shields* v *Guffey*, 9 Id., 322, clearly justify us in overruling this objection.

VII. The affidavits of the jurors were introduced to show how they construed the third instruction above quoted, that under it they understood " a preponderance of evidence was not required, but only evidence tending to show fraud." These affidavits were read without objection, and the question of their admissibility would only become material at this time, if we should conclude that there was anything in them to justify a new trial. Without passing upon the question, we remark that to receive such affidavits would seem to us dangerous in policy and unwarranted upon principle. If the practice should be tolerated, then every verdict would be at the mercy of the understanding of jurors, or a juror even,—such understanding, influenced ever so much and ever so unconsciously, it may be long after he had discharged his duty. The facility with which, to help out an unfortunate suitor, or to excuse the juror in the discharge of an unpleasant duty, these affidavits can be obtained is well known to the profession and courts.

But without following this thought further, we conclude that the affidavits in this case, if properly admitted, present no justification for granting a new trial. The Court below, after hearing all the testimony, and fully cognizant of all the facts, refused to interfere. Taking all the instructions together, we do not see how it would be possible for the jury to fairly draw the conclusion stated. Even when such affidavits are received, we must be satisfied that they had reasonable ground for the construction stated in the

instructions themselves, and that the Court below abused its discretion before interfering. This is not the case in the present instance, and the judgment is

Affirmed.