GEORGE W. HARVEY, Appellee, v. WALTER PHILLIPS et al.,
Appellants.

FRAUDULENT CONVEYANCES: Nature of Evidence. Principle re-
1  affirmed that, in an action to set aside deeds as fraudulent, the *evi-
dentiary facts* of the alleged fraud must be very clearly established.

HUSBAND AND WIFE: Conveyances—Right to Prefer Wife. Prin-
2  ciple reaffirmed that, if the wife is a bona-fide creditor of the hus-
band, the husband may transfer property to the wife in satisfaction
of her debt.

FRAUDULENT CONVEYANCES: Mutual Fraudulent Intent. A mu-
3  tual fraudulent intent is an essential element of an action to set
aside deeds by a husband to his wife for a valuable consideration.
Pre-eminently is this true when plaintiff is a *subsequent* creditor.

EVIDENCE: Documentary—Certified Copy of Judgment. A judgment
4  may be proven by a duly certified copy of the record.

APPEAL AND ERROR: Harmless Error—Competent and Incompetent
5  Evidence of Fact. Incompetent evidence to the effect (1) that, in
a mortgage foreclosure, defendant had assumed the payment of the
mortgage, and (2) that a defendant secondarily liable had a ''writ-
ten'' assignment of the judgment, is quite harmless when the decree
itself clearly demonstrates such assumption of payment, and equally
demonstrates the nonnecessity of *any* assignment, in order to enable
the party secondarily liable to compel reimbursement by the party
primarily liable.

*Appeal from Marion District Court.*—H. S. DUGAN, Judge.

MARCH 7, 1922.

ACTION in equity by plaintiff, judgment creditor of the
defendant Walter Phillips, to set aside a deed to Lot 3 of the
north half of Lot 4, Block 6, in the town of Tracy, Iowa, exe-
cuted by one England to the defendant Nellie Phillips, in Janu-
ary, 1920, and recorded in April, 1920, for a consideration of
$1,000, subject, however, to a mortgage of $750, and to subject
said lots to the payment of a deficiency judgment rendered
some time ago in favor of one Farr and against the plaintiff

herein, Harvey, and defendant Walter Phillips and others, which judgment provided that, in case the plaintiff herein was compelled to pay any part of the original judgment, he should have recourse against the defendant herein, Walter Phillips. Plaintiff alleges that he was forced to pay the balance of said judgment in the sum of about $1,200, which amounted, with interest, at the time of the trial, to $1,376.16. By a second amendment to the petition, plaintiff alleges that the equity of defendants in the foregoing described property is not sufficient to pay his claim, and he asks the same relief in regard to the equity of defendants in an 80-acre tract of land in Lee County, which, at the time of the trial, was, according to the evidence, worth $125 an acre. There was a mortgage of $8,000 against this property. It does not appear clearly from the record whether this mortgage was on the property at the time, but we assume that it was, and that only the equity was purchased, since it appears that it was taken in a trade for Texas land. As said, the evidence shows that the land is now worth about $10,000, but its value in 1913 is not shown. We take notice of the fact that land generally increased in value between 1913 and the time of the trial. In so far as the consideration or any claimed inadequacy in consideration is concerned, the value should be taken as of that time, rather than the present. This tract was deeded to defendant Nellie Phillips by her husband, her codefendant, Walter Phillips, about 1913 or 1914, or was taken in her name. The original judgment in favor of Farr against this plaintiff and defendant Walter Phillips and others was rendered in June, 1920. Defendant Nellie Phillips was not a party to that judgment. Plaintiff's claim is that, while the title to the properties was in defendant Nellie Phillips, it was held by her in trust for her husband, and that the conveyances were made with intent to defraud creditors, and especially this plaintiff, who became a creditor subsequent to the conveyances. The trial court found for plaintiff, that the amount of the judgment June 10, 1920, was as before stated, that defendant Walter Phillips is, in fact, the owner of the properties before described, and that he caused said real estate to be conveyed to his wife for the purpose of defrauding his creditors; and decreed that the judgment against defendant be a lien on the Tracy property before

described, and that, upon filing transcript of said judgment with the clerk of the district court of Lee County, said judgment be declared a lien upon the 80-acre tract, and that execution issue for the sale of said premises in satisfaction of the judgment.   The defendants appeal.—*Reversed.*

*C. C. Orvis* and *Crozier & Hockersmith,* for appellants.

*Vander Ploeg & Johnson,* for appellee.

PRESTON, J.—The question presented is largely one of fact, and of the proper inferences to be drawn from the evidence. The plaintiff placed both defendants on the stand as his witnesses, and relies almost entirely upon their testimony, to show the intent and the alleged fraudulent purpose in making the conveyances. By placing the defendants on the stand as witnesses, to a certain extent he vouches for their truthfulness, and he may not impeach them, although, of course, he may contradict, and may rely upon the proper inferences to be drawn from the circumstances testified to by them.  Under such circumstances, we may not construe their evidence only as it is against the defendants, but must construe it as well in their favor.   In other words, the evidence must be taken all together.   Generally, fraud is not presumed, and ordinarily, in a civil action, only a preponderance of the evidence is required; but still, to establish the evidentiary facts of bad faith, the proof must be clear, satisfactory, and convincing.  *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa 203, 209; *Severson v. Kock,* 159 Iowa 343, 347; 20 Cyc. 120.   We held, in *Schrimper v. Chicago, M. & St. P. R. Co.,* 115 Iowa 35, 40, and *Johnson v. Tyler,* 175 Iowa 723, 733, that, to justify a decree setting aside or reforming a deed because of alleged fraud, the evidence must be clear and satisfactory, and that a mere preponderance is not sufficient; that any other rule would be highly dangerous, and tend to weaken confidence in all titles.   It may be that the instant case is not one, strictly speaking, to set aside a deed, and yet that is the effect of it, so far as the defendant Nellie Phillips is concerned; for she is deprived of her title by the finding of the trial court.   We held, in *Lillie v. McMillan,* 52 Iowa 463, that, in a case where

1. FRAUDULENT CONVEYANCES: nature of evidence.

fraudulent conveyance is charged, a preponderance of evidence is all that is required. That case is cited on that proposition alone. We might not now agree to some of the discussion therein, that the same degree of proof is required in a civil as in a criminal action, where the cause of action is based upon a crime. *State v. Carey*, 188 Iowa 1308, 1324. Even though only a preponderance of the evidence is required, still we think that the evidentiary facts of the alleged fraud should be established by clear evidence, as stated in *Ley v. Metropolitan Life Ins. Co.*, supra.

It is true, of course, that, in cases of this character, there are certain badges of fraud from which certain inferences may be drawn from facts proven. 12 Ruling Case Law 537 and 514.

2. HUSBAND AND WIFE: conveyances: right to prefer wife.

It is doubtless true that a conveyance from husband to wife requires less proof to show fraud than if the transaction were between strangers. But if the wife is the bona-fide creditor of her husband, he may transfer property to her in satisfaction of her debt, just as he might do in the case of any other creditor. 12 Ruling Case Law 515, 589. Other cases hold that the mere existence of the relation of husband and wife does not create an implication as to fraud against creditors, especially where it is not shown that the creditor was such at the time of the conveyance. 12 Ruling Case Law 514.

It is urged by appellants that plaintiff is not entitled to the relief prayed, because he was not a creditor at the time of the alleged conveyances; that he became such only subsequent

3. FRAUDULENT CONVEYANCES: mutual fraudulent intent.

thereto. It appears that, at the time of the conveyance of the land in 1913, the plaintiff and defendant Walter had not had any dealings whatever, and the debt which plaintiff claims defendant assumed in the conveyance of certain land by plaintiff to defendant was about 1918, when, as plaintiff claims, defendant assumed the mortgage on the land upon which the judgment was later rendered against both plaintiff and defendant Walter. The deed to defendant Nellie from England to the Tracy lots was after the judgment now held by plaintiff.

The trial court relied upon the case of *Brundage v. Cheneworth*, 101 Iowa 256, 263. That case was decided on demurrer

to the petition. The petition alleged that the lands were conveyed to the wife with the intent of hindering, delaying, and defrauding his creditors. Such allegation was admitted by the demurrer. It was said at page 261 that the petition set forth a good cause of action, and that, if the wife held the property in trust for the husband, the grantor, as was alleged, and he remained the real owner, then his creditors, whether existing or subsequent, were entitled to have said conveyance set aside, and to have the land subjected to the payment of their claims. The rule was stated at page 263 thus:

"(1)   A conveyance which is merely voluntary, and when the grantor had no fraudulent view or intent, cannot be impeached by a subsequent creditor. (2)   A conveyance actually and intentionally fraudulent as to existing creditors, as a general rule, cannot be impeached by subsequent creditors. (3)   If a conveyance is actually fraudulent as to existing creditors, and merely colorable, and the property is held in secret trust for the grantor, who is permitted to use it as his own, it will be set aside at the instance of subsequent creditors. The second rule above laid down is subject to some exceptions, among which may be mentioned cases in which the conveyance is made by the grantor with the express intent and view of defrauding those who may thereafter become his creditors; cases wherein the grantor makes the conveyance with the express intent of becoming thereafter indebted; cases of voluntary conveyances, when the grantor pays existing creditors by contracting other indebtedness in a like amount, and wherein the subsequent creditors are subrogated to the rights of the creditor whose debts their means have been used to pay; cases in which one makes a conveyance to avoid the risks or losses likely to result from new business ventures. * * * We have not overlooked the fact that there are respectable authorities holding that a conveyance actually fraudulent as to the existing creditors may, for that reason alone, be avoided by subsequent creditors. We are not, however, prepared to assent to the correctness of such a doctrine."

See, also, *Farmers & Merch. Bank v. Daiker,* 166 Iowa 728, 732, 737; 2 Pomeroy's Equity Jurisprudence (4th Ed.), Sections 970, 972; 12 Ruling Case Law 495. Our statute refers to

subsequent, as well as to prior, creditors. Code Section 5042. Under this statute, it has been held that an instrument such as is referred to is void. *Davenport v. Cummings,* 15 Iowa 219. The gist of the matter is the intent. And the question is, in the instant case, whether plaintiff has shown by the evidence and the proper inferences therefrom, intent to defraud subsequent creditors. He must so show. *Ley v. Metropolitan Life Ins. Co.,* and 12 Ruling Case Law 495, supra. 2 Pomeroy's Equity Jurisprudence (4th Ed.), supra. As said in the citation from Pomeroy, supra:

"There must be an intent to hinder, delay, or defraud creditors. All other considerations are subordinate and ancillary to the establishment of this indispensable feature."

This is the rule, more particularly as applied to subsequent creditors. We understand appellees to so concede; for they say in argument, and cite authority to the point, that a subsequent creditor has the right to have a voluntary deed set aside, if made with the intent and design of defrauding subsequent creditors (citing *Scott v. Keane,* 87 Md. 709 [42 L. R. A. 359]). See, also, *Davenport v. Cummings,* supra. Plaintiff's contention is that he has so established this essential fact. Appellants contend that plaintiff has not so shown, and they claim that the defendant Walter Phillips was indebted to his wife; that he had been advised by his physician that, on account of his physical condition, he was likely to soon die, and that he had better put his affairs in shape; and that he deeded these small equities to his wife in payment of his indebtedness to her. Where property is purchased by the husband with his wife's money, and he takes title in his own name, without her consent, there is a resulting trust in her favor, and under such circumstances, a subsequent conveyance to the wife is not fraudulent as to creditors; and this is so whether the title was taken by the husband deliberately or by mistake. If she knew the fact and consented, the case is stronger against her. 12 Ruling Case Law 523. As said, appellants contend, and they so testify, that the husband was indebted to the wife, and that the conveyances were made in satisfaction of such indebtedness. Under such circumstances, it is held that the test of a fraudulent conveyance, in case of a transfer for a valuable consideration, is the mutual fraudulent intent of

the parties, and that it is not enough to show fraudulent intent on the part of one, without a corresponding intent on the part of the other. In such a case, the grantee must be shown to have participated in the fraud. 12 Ruling Case Law 532, 533, 535; *Roberts, B. & Co. v. Press,* 97 Iowa 475; *Swanson Auto Co. v. Stone,* 187 Iowa 309; *Stroff v. Swafford Bros.,* 81 Iowa 695. See, also, *Ford v. Ott,* 182 Iowa 671, 679; and, as having a bearing on the question of the right of a debtor to prefer one creditor, *Des Moines Pkg. Co. v. Uncaphor,* 174 Iowa 39. The burden of proof is upon plaintiff to establish the fraud and the other facts relied upon. *Swanson Auto Co. v. Stone,* supra.

Appellee cites *Letz v. Smith,* 94 Iowa 301, *Woods v. Allen,* 109 Iowa 484, and *Boog v. Boog,* 78 Iowa 524, to the proposition that, where the relation of debtor and creditor does not exist between the husband and wife, the conveyance of property to the wife will be fraudulent as to creditors. The facts in those cases are quite different from the instant case. For instance, in one it appears that the wife never had any money or property in her own right. It does not appear that any of them had reference to the rights of a subsequent creditor. The *Boog* case was where a husband conveyed all his property, to defeat alimony in a contemplated divorce case, and where land conveyed by the husband to a second wife was purchased with his own money. Other cases are cited by appellee to the proposition that it is not necessary that there should be proof of positive knowledge of the existence of the creditor's debt by the grantee, to invalidate the conveyance; that such knowledge may be inferred from circumstances. Among the cases so cited is *Leick v. Dee,* 86 Iowa 709. In that case, the indebtedness of the husband was a very large amount, and the court held that, this being so, the wife and daughter must have known of it; but on rehearing, the opinion was changed as to the daughter. Other cases are cited to the point that, where a wife gave money to her husband at different times, without any promise by him of repayment, there was no valuable consideration, as against creditors, for a conveyance of real estate to her by her husband. *Carr v. Way,* 141 Iowa 245. In that case, the intent of the husband was shown. It was further held that, if the wife was a creditor, she could take a valid conveyance in satisfaction of his

debt, unless she participated in his intent to defraud other creditors. The wife took the property pending litigation, and it was held that she had knowledge of the fraudulent intent on the part of her husband, or sufficient notice to put her upon inquiry. It does not appear that that was a case of a subsequent creditor. Other cases cited on this point are *Carbiener v. Montgomery,* 97 Iowa 659; *Woods v. Allen,* supra. We shall not stop to review the other cases cited. Cases cited by appellee, and upon which he largely relies, are cases where the rights of existing creditors are involved, rather than the rule announced in the *Brundage* case, supra, where the rights of subsequent creditors are involved.

With these rules in view, we proceed to consider the evidence. We shall attempt to do this as briefly as may be, referring only to the more important circumstances.

Before going to the evidence, however, it may be well to dispose of some preliminary matters urged by appellants. It is thought by appellants that there was no competent evidence that

**4. EVIDENCE: documentary: certified copy of judgment.** any judgment was rendered, for that no record thereof was produced and offered in evidence; but a duly certified copy of the judgment and decree was offered and admitted in evidence. This was sufficient. Code Section 4635..

The judgment in controversy was rendered in a foreclosure action. Plaintiff testifies that he bought the land subject to the mortgage, and agreed to pay it, and over objection testified that

**5. APPEAL AND ERROR: harmless error: competent and incompetent evidence of fact.** he sold it to the defendant Walter Phillips on the same terms. This was denied by Phillips. There was a personal judgment in favor of Farr, and against this plaintiff and Phillips. Plaintiff's theory was that he had a written assignment of the judgment, and that he was forced to pay it, to save his own property. He was asked, and testified, over defendant's objection that it was not the best evidence, that he did have a written assignment. No writing was produced, and there was no other evidence of any written assignment. The objection was good. However, the certified copy of the foreclosure decree, which was set out in full, recites, among other things, that a personal judgment is rendered, that a special execution issue, and that gen-

eral execution issue for any balance remaining unsatisfied, after exhausting the mortgaged property, against defendants George W. Harvey, Walter Phillips, and others; and that, should the said Harvey be required to pay any part of the indebtedness found to be due the plaintiff on said notes and mortgage, said Harvey shall have and recover such sum as he is required to pay, from .defendants Walter Phillips and J. S. McCleary, as the persons primarily liable therefor. Such a judgment could have been rendered on no other theory than that defendant Walter Phillips had assumed and agreed to pay the incumbrance. He is bound by the judgment, and may not now go back of it. Though no assignment was proved, the rights and obligations of both plaintiff and Walter Phillips are fixed by the decree, so far as they relate to that matter.

It is next complained by appellants that it does not appear that plaintiff was forced to pay the deficiency judgment by the levy or threat of execution upon his property, and that the payment, if made at all, was voluntary on plaintiff's part. The certified copy of the judgment and the transcript thereof show that special execution was issued, and the mortgaged property sold for about $400, leaving the deficiency in question; but it does not show that any general execution was issued against the plaintiff herein, or anyone. The only evidence on that subject is found in the testimony of plaintiff himself, as follows:

"Q. Well, after this judgment was rendered, did you have to pay it? (Objected to because immaterial, irrelevant, incompetent, the witness being incompetent, not the best evidence, etc.) A. I did."

It is a matter of some doubt whether this is sufficient. The evidence on this point, as well as on some other important points in the case, is not very clear. Without further discussion as to these last mentioned several matters, we do not definitely determine them,. for the reason that, under the evidence and the entire record, we are satisfied that plaintiff has not brought his case within the rule announced in the *Brundage* and other cases cited supra.

It must be conceded that there are some circumstances in the record which are against the defendants, and which tend to support plaintiff's claim. We shall refer to some of the more

important of them. Plaintiff testifies that, some time after he sold the land to defendant Walter Phillips, said defendant told plaintiff that "there was nobody going to get him, because he had his stuff fixed so they couldn't; that he had his stuff deeded to his wife; and that he had deeded the Bluff Park land to his wife, so that nobody could get on him or ride him for it, or collect off of him." Said defendant, as a witness, denies making such a statement. They are both plaintiff's witnesses, and both equally interested in the result of the suit. The wife did not participate in the conversation, and she claims, as before stated, that the land was conveyed to her to satisfy a debt owed to her by her husband, and claims that, even if there was fraud on the part of her husband, she did not participate in it. It appears that defendant Walter Phillips has had some litigation in the last two or three years, and there are one or two cases pending now, all since the land was conveyed to the wife, and some of them since the conveyance of the lots to her. As to one of these cases, defendant Walter testifies that he has been trying to get the case tried for a good while. In another, the court directed a verdict in his favor. Another case seems to be between this plaintiff and defendant, and of it, defendant says that he never considered that he owed plaintiff anything on the Wisconsin land trade, because plaintiff traded him some worthless land in Illinois. It appears that defendant Walter is engaged more or less as a trader, as we understand plaintiff also to be. At the time of the trial, defendant Walter Phillips had no property in this state in his own name. Defendant Nellie Phillips did not take notes from her husband for the money she claims to have advanced to him, and defendant Walter traded some Texas land for the Bluff Park land. This is the property that the husband deeded to the wife, or the title to which he took in his wife's name. It appears that of this, there are but 15 acres tillable land, and that the rest is timber. It is a sort of a summer resort, managed by the defendants in the summer time. A few days before the Tracy property was purchased from England, defendant Walter had deposited $1,000 in a bank at Oskaloosa, in his wife's name; and when the property was purchased, his wife gave an order for him to draw the money out of the bank in payment. As we understand the record, and as before stated,

this property was incumbered for $750; but it is not clear whether or not it was so incumbered at the time of the purchase. The title to the other properties was taken in the wife's name; but plaintiff has not asked to set aside such conveyances, and the evidence is meager in regard to them.   Defendant had other property in Wisconsin and Texas, wherein the grantees' names in the deeds were left blank, doubtless for convenience in exchange.   Appellee contends that Nellie Phillips testified that, each time her husband made a trade, the property was carried in her name; that it was thought better to have it in her name. The evidence is not quite so strong as that.   Because of a controversy between counsel as to the record, we have been compelled to go to the transcript on this and on one or two other points. Her testimony is:

"Q.  Did your husband ever own any real estate or property in his own name, or did he always carry it in your name? A.  I think at times he has had some, but it has usually been put in my name; it was thought better to have it in my name. Q.  Put in your name,—and did you have any understanding about it?  What was the purpose of carrying it in your name— did he tell you?  A.  On account of his health.  Q.  Do you know of any property he carried in his own name?  A.  No; for he has traded so much.  Q.  Each time he makes a trade, it is carried in your name?  A.  Yes, sir.  About 1918, Doctor Parks told my husband that, on account of an affliction he had, he could not live but a short time, and he had better take care of his business, and fix up his matters, because it was only a short time when he would die."

The Tracy lots in controversy are 30x120 feet, and, as we understand the record, are used in connection with defendant's homestead, other lots owned by defendant Nellie.  It appears that she also owns another lot and a half, upon which is situated a pool hall, all adjoining, as near as we can tell from the record. Some of the lots are vacant.  As we understand it, the pool hall rents for $15 per month, and defendant Nellie claims that she purchased the other places, or that they were purchased with her own money.

On the other hand, circumstances relied upon by appellants as tending to contradict plaintiff's claims are, in addition to

those before mentioned, that plaintiff did not and does not claim to have relied on the ownership of the properties in controversy by Walter Phillips at the time the debt in controversy arose; defendant Nellie Phillips testifies that her husband borrowed from her money that she had received from her mother, and claims that this amounted to something like $500; and the probate records introduced show that she received, at the time she became of age, $133.40 from her guardian. She testifies that her mother died in 1920 or 1921; that, prior to her death, her mother had given her money at different times, sometimes $50 or $75 at a time; that these moneys, or considerable portions thereof, were loaned to her husband; that her mother gave her three residence properties in Tracy. This last, we understand, was received by her after her mother's death. As to the Tracy property in controversy, she testifies, as does her husband, that it was purchased of England with her own money. She also testifies that she received money from her foster mother, which she turned over to her husband. It appears that defendant Walter Phillips inherited some $6,000 or $7,000 from his father, before the transaction with plaintiff, and owned such share at the time plaintiff claims that Walter Phillips became his debtor. The plaintiff testifies that he knew of Walter's owning this property or share in the father's estate. The defendant testifies that he used a considerable part of that money to pay on debts he was owing. The defendants were married in 1899. Defendant Nellie testifies that she received nearly $500 from her foster mother, which had been loaned out, and that, at the time she married defendant Walter, she turned this money over to him,— not all at once, but at different times,—and loaned him other moneys. The defendants both testify that the conveyances in question were not made for the purpose of defrauding creditors; that they were made in good faith, to satisfy the indebtedness of the husband to the wife. There is no evidence that defendant Walter contracted large debts shortly after the conveyance. Had this been shown, it would be strong evidence of a fraudulent intent. 12 Ruling Case. Law 497. So, too, had he changed his occupation and embarked in a new and hazardous business. The record does not show there was any change in his business from what it had been before. This evidence was introduced

by the plaintiff with the other circumstances tending to show a contrary purpose.

We have not attempted to set out all the evidence on either side, but, after having read the record, we are not satisfied that plaintiff has made out a case, under the rule laid down in the *Brundage* and other like cases; that plaintiff has shown that the conveyances were made by the grantor with the express intent and view of defrauding those who might thereafter become his creditors; or that the grantor made the conveyances with the express intent of becoming thereafter indebted; or that the conveyances were made to avoid the risks likely to result from new business ventures. Though, as said, there are circumstances against the defendants, and though they may not have proved some of the circumstances relied upon by them as clearly as might be, we think it is as probable, from the record, that the conveyances in question were to secure a debt owed by the husband to the wife, and that she furnished the money for one of the properties at least, as that the conveyances were made with the fraudulent intent on the part of the husband, participated in by the wife, to defraud future creditors, or that defendant Walter Phillips is the owner of the property, and that it is held by his wife in trust, as contended by plaintiff.

Under the entire record, we think the decree of the district court ought to be reversed. It is reversed, and the petition dismissed.—*Reversed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.